JOHN S. WILLIAMS, ADMINISTRATOR OF JAMES WILLIAMS, DE-
CEASED, APPELLANT, *v.* ROBERT M. GIBBES AND CHARLES
OLIVER, SURVIVING EXECUTORS OF ROBERT OLIVER, DECEASED;
AND ROBERT M. GIBBES AND CHARLES OLIVER, SURVIVING
EXECUTORS OF ROBERT OLIVER, DECEASED, APPELLANTS, *v.*
JOHN S. WILLIAMS, ADMINISTRATOR OF JAMES WILLIAMS, DE-
CEASED.

Where an assignee of a claim upon a foreign Government, holding it under an
assignment supposed to be good, but afterwards adjudged invalid, prosecuted
the claim to a successful result, and was subjected to costs and expenses in
protecting the fund from rival claimants, and thereby preserving it, he was enti-
tled to a reimbursement of these costs and expenses by the true owner, upon a
final settlement of accounts between them.

Being placed in the position of a trustee, it was his duty to defend the title, and
the expenses for so doing were properly chargeable to the estate.

The assignee ought also to have been allowed a compensation for his trouble and
personal exertions in the prosecution of the claim; and under the special cir-
cumstances of this case, the Circuit Court having allowed thirty-five per cent.
of the sum realized, this court are not prepared to say it is too much.

An objection, that the executors of the assignee had distributed a portion of the
money in the regular course of administration, should have been made when the
cause was before this court upon its merits. After a mandate has gone down,
and the cause came before the Circuit Court for a settlement of accounts, the
objection comes too late.

No objection can be made to the Circuit Court allowing a supplemental answer to
be filed when the mandate went down. It was like a petition to bring before
the court the facts, which were proper to be known before instructions were
given to the master as to the mode of settling the accounts.

THESE were cross appeals from the Circuit Court of the
United States for the district of Maryland. In the report, the
first case only will be mentioned, viz: that of Williams against
Oliver's executors.

The case was formerly before the court, and is reported in
17 How., 239.

The facts are stated in the opinion of the court.

It was argued by *Mr. Davis, Mr. Dulany,* and *Mr. Martin,*
for Williams, and by *Mr. Reverdy Johnson* and *Mr. Campbell*
for Oliver's executors.

The decree was for $9,686.33 in money, and $19,215.95 in
stock, instead of $22,866.94 in money, and $32,847.77 in stock,
as claimed by the appellant.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the
United States for the district of Maryland.

A bill was filed in the court below by Williams, the present
appellant, to recover of the defendants the proceeds of the share

of complainant's intestate in what is known as the Baltimore Company, which had a claim against the Mexican Government, that was awarded to it under the treaty of 1839. The proceeds of the share amounted to the sum of $41,306.41. The history of the litigation to which the award under the treaty gave rise, in the distribution of the fund among the claimants or the assignees composing the Baltimore Company, will be found in the report of four of the cases which have heretofore come before this court. (11 How., 529; 12 ib., 111; 14 ib., 610; 17 ib., 233, 239.) That of Williams *v.* Gibbes, in 17 How., contains the report of the present case, when formerly here. This court then decided that the claim of the executors of Oliver to the share of Williams was not well founded; that the interest of Williams in the same had not been legally divested during his lifetime; and that his legal representative then before the court was entitled to the proceeds. The decree of the court below was reversed, and the cause remanded for further proceedings, in conformity with the opinion of the court. Upon the cause coming down before that court on the mandate, the defendants, the executors of Oliver, set up several charges against the fund, which it was claimed should be received and allowed in abatement of the amount.

1. For certain costs and expenses to which they had been subjected in resisting suits instituted against it by third parties. The history of these suits will be found in the cases already referred to in this court, and need not be stated at large.

2. For services and expenses of Oliver, in his lifetime, in the prosecution of the claim of the Baltimore Company, as its attorney and agent before the Government of Mexico, from the year 1825 down to the time of his death, in 1834.

The court below allowed to the executors the costs and expenses to which they had been subjected in defending the suits mentioned, and also thirty-five per cent. of the fund in question for the services of Oliver.

The case is one in many of its features novel and peculiar.

James Williams, the intestate, and owner of the share in the Baltimore Company, became insolvent in 1819, and took the benefit of the insolvent laws of Maryland, and in 1825 the insolvent trustee of his estate sold and assigned to Robert Oliver the share in question in this company; and from thence down to the year 1849, Oliver in his lifetime, and his executors afterwards, did not doubt but that a perfect title to the share had passed by virtue of this assignment. In that year, the Court of Appeals of Maryland decided, in a case between the executors and an insolvent trustee of Williams, that no title passed to Oliver by this assignment; and, as a legal conse-

quence, it was held by this court, in 17 How., that the interest remained in Williams at his death, and of course passed to his legal representative, the complainant.

All the services and expenses, therefore, of Oliver, in his lifetime, in the prosecution of the claims of the Baltimore Company against the Government of Mexico, and of the litigation since encountered by his executors in respect to the share, have resulted in securing the proceeds of the same to the estate of Williams, the original shareholder. Williams in his lifetime, and his legal representatives since, down till the fund was in court awaiting distribution, had taken no steps for its recovery, nor had they been subjected to any expense. The whole of the services had been rendered, and expenses borne, by Oliver and his executors; and the question is, whether, upon any established principles of law or equity, the court below were right in taking into the account in the settlement between the parties these services and expenses. We are of opinion they were.

By the judgment of the Court of Appeals of Maryland, Oliver was at no time the true owner of this share, as, notwithstanding the assignment by the insolvent trustee, it still remained in Williams. Oliver thereby became trustee, instead of owner, of the share and of the proceeds, as did also his executors, and they must be regarded as holding this relation to the fund from their first connection with it. In that character the executors have been made accountable to the estate of Williams, and have been responsible since the fund came into their possession for all proper care and management of the same. In defending these proceeds, therefore, against suits instituted by third parties to recover them out of the hands of the executors, they have done no more nor less than they were bound to do, as the proper guardians of the fund, if they had known at the time the relation in which they stood to it, and that they were defending it for the benefit of the estate of Williams, and not for that of Oliver. The services rendered and expenses borne could not have been dispensed with, consistent with their duties as trustees.

But it is said that these suits were defended by the executors, while claiming the fund in right of their testator, and hence for the supposed benefit of his estate; that the defence was not made in their character of trustees, and cannot, therefore, be regarded as a ground for charging the estate of Williams with the costs of the litigation.

The answer to this view is, that although in point of fact the defence was made under the supposition that the fund belonged to the estate of Oliver, yet, in judgment of law, it was made

by them as trustees, and not owners, as subsequently judicially ascertained; and as the costs and expenses were properly incurred in the protection and preservation of the fund, it is but just and equitable they should be made a charge upon it.

The misapprehension as to the right cannot change the beneficial character of the expense, when indispensable to its security.

The duty of a trustee, whether of real or personal estate, to defend the title, at law or in equity, in case a suit is brought against it, is unquestioned, and the expenses are properly chargeable in his accounts against the estate. (2 Story Eq. Juris., sec. 1275.)

Another principle which we think applicable to this case is to be found in a class of cases where a *bona fide* purchaser, for a valuable consideration, without notice, has enhanced the value of the property by permanent expenditures, and has been subsequently evicted by the true owner, on account of some latent infirmity in the title. It is well settled, if the true owner is obliged to come into a court of equity to obtain relief against the purchaser, the court will first require reasonable compensation for such expenditures to be made, upon the principle that he who seeks equity must first do equity. (2 Story Eq., secs. 799 and 7996; 6 Paige R., 403, 404; 1 Story Rep., 494, 495.)

A kindred principle is also found in a class of cases where there has been a *bona fide* adverse possession of the property tacitly acquiesced in by the true owner. The practice of a court of equity, in such cases, does not permit an account of rents and profits to be carried back beyond the filing of the bill. (8 Wheat., 78; 27 E. L. and E. Rep., p. 212; 7 Ves., 541; 1 Ed. Ch., 579.) This principle is applicable where the person in possession is a *bona fide* purchaser, and there has been some degree of remissness, or negligence, or inattention, on the part of the true owner, in the assertion of his rights.

Courts of equity, it would seem, do not grant active relief in favor of a *bona fide* purchaser, making permanent meliorations and improvements by sustaining a bill brought by him against the true owner, after he has succeeded in recovering the property at law. (6 Paige R., 390, 403, 404, 405; 1 Story R., 495; 8 Wh., 81, 82.)

The civil law in this respect is more liberal, and provides a remedy in behalf of the purchaser, even beyond an abatement of the rents and profits for such expenditures as have enhanced the value of the estate, (cases above;) and, indeed, generally applies the principle in favor of any *bona fide* possessor of property who has in good faith expended his money for its preser-

vation or amelioration; otherwise, it is said, the true owner appropriates unjustly the property of another to himself. (Touillier, 3 B., tit. 4, ch. 1, secs. 19, 20.)

Now, in the case before us, Oliver, in 1825, purchased this share in the Baltimore Company for the consideration of $2,000, its full value at the time. The purchase was made from the insolvent trustee of Williams, whom all parties concerned believed had the power to sell and transfer the title. Williams, down till his death in 1836, set up no claim to it, nor did his representative after his death till August, 1852, when this bill was filed. Oliver and his executors had been in the undisturbed possession, so far as respects any claim under the present right, for the period of twenty-seven years. And although it may be said in excuse for any remissness, and by way of avoiding the consequences of delay, that Williams, and those representing him, had no knowledge of the defect in the title till the decision of the Court of Appeals of Maryland; it may be equally said, on the other hand, that Oliver and his executors were alike ignorant of it, and had in good faith expended their time and money in recovering the claim against the Government of Mexico, and afterwards in defending it against a long and expensive litigation.

It is difficult to present a stronger case for the protection of a *bona fide* purchaser from loss, who has expended time and money in enhancing the value of the subject of the purchase, or a case in which the principle more justly applies, that where the true owner seeks the aid of a court of equity to enforce such a title, the court will administer that aid only when making compensation to the purchaser. We are, therefore, of opinion that the court below was right in allowing in the account the costs and fees paid to counsel by t ᷓ executors in the defence of the suits.

In respect to the thirty-five per cent. allowed for the prosecution of the claim against the Government of Mexico, it stands, in principle, upon the same footing as other services and expenses incurred in protecting and preserving the fund after possession was obtained. The amount of compensation depends upon the proofs in the case as to the value of the service, and which must, in a good degree, be governed by the usual and customary charges allowed for similar services and expenses. As this claim was prosecuted with others by Oliver when he supposed and believed that he was the owner, and that he was acting on his own behalf, and not as trustee for Williams, the rate of compensation must rest upon all the facts and circumstances attending the service. There could have been no agreement as to the compensation. And for the same reason, it cannot

be expected that an account of the service and expenses was kept so as to enable the court to arrive with exactness at the proper sum to be allowed, as might have been required, if Oliver had been chargeable with notice of the trust. The proofs show that Oliver appointed agents to represent him at the Government of Mexico as early as March, 1825, and that these agencies were continued from thence down till his death in 1834; and that during all this time he kept up an active correspondence with them and others, and with our ministers at Mexico, and with his own Government, on the subject. The justice of these claims had been acknowledged by the Government of Mexico as early as 1823–'4, but no provision was made for their payment. They were regarded as of very little value, from the hopelessness of their recovery; and it is perhaps not too much to say, upon the evidence, that in the absence of the vigorous and efficient prosecution of them by Oliver, they would have been worthless. In the result, for the share in question, which was sold in 1825 for $2,000, there was realized from the Government of Mexico, under the treaty of 1839, the sum of $41,306.41. The estate of Williams has never expended a dollar towards recovering it; nor has Oliver ever received any compensation for his servicess. The amount may seem large, but we cannot say the court below was not warranted in allowing it upon the proofs in the case of the great service rendered, and of the customary charges in similar cases.

It has been urged by the executors of Oliver, that they had paid over three-eighths of the fund in the distribution of the estate before the filing of the bill in this case, and that they are not, therefore, liable for that portion of the fund. It is claimed that it was shown before the master that this portion was paid over in the regular course of administration, and as in duty bound by the laws of the State of Maryland. If this had appeared when the cause was heard upon the merits, and the question as to the right to this fund was determined, the ground now taken might possibly have been a good defence to that portion of the fund; and the complainant would have been sent to the distributees to recover it. This, however, may not be entirely certain; for there is authority for saying, that a trustee having notice that it is doubtful if the trust fund should be distributed according to the trusts under which he holds it, he should apply to the court for its direction before he executed the trust, by paying over the fund. (27 E. L. and Eq. R., p. 302.) In this case, the executors of Oliver had notice of the defect of the title of their testator after the decision of the Court of Appeals. But be this as it may, we think the question of liability, to the extent of the whole of the fund,

was disposed of in the case when before us on the merits, and was not reserved for the hearing on the adjustment of the accounts before the court below, on the coming down of the mandate. (17 How., 257.)

An objection has been made by the counsel for the appellant, Williams, in respect to the order of the court below, permitting a supplemental answer. We suppose this question rather a matter of practice than otherwise, resting in the discretion of the court below, and as a matter of convenience preparatory to the taking of the account before the master. The answer—and, for aught we see, the object in view might as well have been attained by a petition to the court, stating the facts—was put in for the purpose of bringing to the notice of the court the matters relied on in the adjustment of the accounts, and by way of charges to be deducted from the amount claimed. The proceeding enabled the court to give in advance directions to the master in making the settlement, and thereby narrow the grounds of controversy before him, and facilitate the hearing. It could work no prejudice to either party, for no claim by way of abatement of the account thus set up in the answer or petition should be allowed by the court, but what was pertinent to the subject of examination before the master.

Upon the whole, we are satisfied the decree of the court below was right, and ought to be affirmed.

Mr. Justice GRIER dissented.