No. 18,845.

MRS. EDWIN LOCKE et al. and The Woman's Home
Missionary Society of The Methodist Episcopal
Church of the Kansas Conference, *Appellants*, v.
MRS. CARRIE E. COPE et al. and the Woman's Home
Missionary Society of the Kansas Conference of the
Methodist Episcopal Church, *Appellees*.

SYLLABUS BY THE COURT.

1. TRUSTEE—*Missionary Funds—Trustee Entitled to Reasonable Fee for Services.* Certain property was by deed conveyed to an attorney in trust to devote the income and proceeds to two missionary organizations of the Methodist Episcopal Church to be used in the cause of missions. Much controversy and considerable litigation ensued touching a proper successor of the trustee to manage and disburse the fund. The trustee in good faith performed legal services in these matters and was allowed a certain fee found by the trial court to be reasonable. *Held*, that such allowance was valid and proper.

2. SAME—*Correction of Journal Entry—Retaxation of Costs.* After the term at which the decree was rendered a motion was filed to correct the journal entry so as to make it speak the truth. This the court did, and upon consideration of further evidence retaxed certain costs. *Held*, proper.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed February 6, 1915. Affirmed.

*Edwin A. Austin*, of Topeka, *L. W. Keplinger*, and *C. W. Trickett*, both of Kansas City, for the appellants.

*Frank Doster*, of Topeka. and *Z. E. Jackson*, of Atchison, for the appellees.

The opinion of the court was delivered by

WEST, J.: This appeal involves the correctness of certain allowances for attorney's fees and expenses growing out of a trusteeship. The record is volumi-

nous, the abstracts covering two hundred twenty pages, but the following will serve as a brief statement of facts: In May, 1905, Fannie Murray, a widow, living at Lancaster, Atchison county, executed to Horace M. Jackson, trustee, a deed of trust covering certain real property in California, "To rent said real property, collect the rents and income thereof, and therefrom pay the taxes, insurance, necessary repairs and charges of every kind and nature upon all of said property, and pay the net proceeds of interest, income and principal, whether derived from such sale or from the insurance collected in case of loss of such property after the payment of said taxes, insurance, repairs and charges and costs of the execution of such trust, to the Woman's Home Missionary Society of the Kansas Conference of the Methodist Episcopal Church, and to the Woman's Foreign Missonary Society of the Methodist Episcopal Church," a New York corporation, in equal parts, to be held as a permanent fund, and the earnings thereof to be used in the cause of missions carried on by the two societies. Fannie Murray was a member of the Methodist Episcopal Church and also of the Woman's Home Missionary Society of the Methodist Episcopal Church of the Kansas Conference, an unincorporated association, which was auxiliary to and governed by an Ohio corporation, the Woman's Home Missionary Society of the Methodist Episcopal Church. She was also a member of the local auxiliary of the Kansas Conference Society and attended some of its meetings when able. Fannie Murray died September, 1906, and before January, 1908, the trustee had converted the real property into money and securities. The Kansas Conference Society was composed of about one thousand members, organized into auxiliary societies located within the boundaries of the Kansas Conference, and it met in annual delegate convention, and was governed by a constitution and by-laws

prescribed by the Ohio corporation to which it was
tributary. The money raised by the various auxiliaries
within the Kansas Conference was remitted by the
treasurer to the treasurer of the Ohio corporation and
disbursed by the latter in accordance with the pledges
made to the conference. At the time of Mrs. Murray's death the conference was remitting about $1400
a year, which afterwards grew to $3000, from one
hundred to three hundred dollars of which was disbursed for missions within the Kansas Conference.
The Methodist discipline did not recognize or permit
the organization of the Kansas Conference Society
as an independent body, but only as subordinate to
the Ohio corporation. It was found that the name
used in the trust deed was intended to mean the
Woman's Home Missionary Society of the Methodist
Episcopal Church of the Kansas Conference and that
there was not at the time any society or organization
having a similar name intended to be designated by
the donor; that the trustee was an attorney at Atchison of high standing and many years' experience as
a lawyer, which facts were known to the officers of
the conference society; that he advised one of such
officers that the proper way to take the trust donation was to organize a corporation; that the Ohio
corporation was not entitled to the fund, and that
he would pay it only to a corporation organized
under the laws of Kansas named in accordance with
the designation in the trust deed. Such incorporation was attempted by the officers of the Conference
Society, but the trustee was not satisfied with the
name, and prepared and submitted a proposed charter.
About this time a number of the officers of the Kansas Conference Society held a meeting and filed the
charter of the Woman's Home Missionary Society of
the Methodist Episcopal Church of the Kansas Conference. The trustee declined to recognize this corporation because its name was not the one used in

the trust deed. Shortly thereafter several women held a meeting as directors of the Woman's Home Missionary Society of the Kansas Conference of the Methodist Episcopal Church—the name designated in the proposed charter already referred to—and undertook to authorize the president, secretary and treasurer to receive the funds and deposit them in a certain bank, and to empower the president to enter the appearance of the society in a suit to be brought by the trustee if so advised after consultation, the proceedings of the meeting being in accordance with the minutes furnished by the trustee along with the proposed draft of the charter. After some correspondence between these women and the Ohio corporation the latter advised referring the matter to a competent attorney and to avoid complying with the requirements of the trustee if possible. Such consultation was had and they were advised to comply, and the proposed charter was executed and filed with the secretary of state. The trustee brought suit in Atchison county against the two corporations to ascertain which one was entitled to the fund, and a decree was rendered, with the consent of the president of the conference society, directing the trustee to pay one-half of the proceeds of the trust property to the newly incorporated society, although no authority so to consent had been conferred by the society or by its executive board. Some controversy arose between this corporation and the Ohio corporation touching the application of the trust fund, followed by attempts to compromise which failed. The plaintiffs herein were duly appointed and authorized to bring this suit on behalf of the Kansas Conference Society. The court below decreed that this society was entitled to the fund when properly incorporated, and that until such incorporation the fund should be deposited in a certain bank.

It appears that for about five years the trustee devoted much time, attention and labor to the trust dur-

ing which period certain heirs of Fannie Murray sought to gain control of the fund and many complicated matters growing out of the claims of the various church societies caused considerable perplexity and litigation. When the deed was executed the property was supposed to be worth from two thousand to three thousand dollars, but the trustee succeeded in realizing about twenty-three thousand dollars, and by counting the interest and increase the fund considerably exceeded that amount. The sum claimed and allowed, exclusive of expenses, was $2750, and there was evidence of the reasonableness of this sum. Twelve hundred and fifty dollars of this was on account of services and expenses to the Woman's Foreign Missionary Society, but that society receipted for its part of the fund with no apparent objection to this charge, and it is not a party here, and this portion of the allowance does not concern the plaintiffs. Certain other allowances on account of fees and expenses to other parties and attorneys are involved and complained of, but the main contention is over the $1500 allowed the trustee. Decisions are cited to the effect that the trustee can not be paid from the fund for unnecessary services or for those rendered in bad faith, and it is argued that those rendered in this case were not only inexcusably needless but in an effort to prevent the trust fund from reaching the beneficiary—which amounts to a charge of bad faith. But the able and careful trial judge who heard the voluminous evidence and saw and heard the principal contenders in this complicated strife thus expressed his views:

"The position occupied by the defendants was not without a sanction of authority. Mrs. ——— and her associates have been advised by Mr. H. M. Jackson, a lawyer of high standing, that their position in the matter was correct, and the District Court of Atchison County had so adjudicated as between the original trustee and the corporation organized to act as a permanent trustee. There was some acquiescence in this disposition of the matter on the part of the officers of

the Kansas Conference Society, at least until it was found that it was deprived of practical control of the trust fund. The question presented in this present action as to the proper solution of the controversy arising between the contending factions was not without difficulty. I do not feel that this is a case in which it can be said that the contentions of the defendant were without merit."

The court, as already stated, expressly found that the trustee "was an attorney at law at Atchison, Kan., of high standing and many years experience as a lawyer," and we have neither cause nor disposition to overturn this finding or go counter to these views.

That a trustee acting in good faith may be paid a reasonable allowance out of the fund seems not to be disputed, but it is urged that the sum allowed is too large in any event. But the rule is well supported that when the trustee renders professional services for the benefit of the estate he is allowed such compensation as is fair and reasonable under all the circumstances. (*Nelson v. Schoonover*, 89 Kan. 779, 132 Pac. 1183; *Perkins's Appeal*, 108 Pa. St. 314, 56 Am. Rep. 208; *Williams v. Gibbes et al.*, 61 U. S. 535, 15 L. Ed. 1013; 28 A. & E. Encycl. of L. 1044; 39 Cyc. 485.)

Per cents deemed reasonable by other courts under other circumstances are adduced, but they are merely persuasive. Here we have a fund derived from an estate on the Pacific coast, whither the trustee once journeyed in pursuit of knowledge touching the real value of the property. The accounts themselves found in the record give evidence of multifarious transactions, and the matters and mutations not mentioned in the foregoing statement of facts are numerous and full of variety. The trial court, with far better opportunity to weigh and correctly determine the evidence and its effect, deemed the allowance reasonable, and no ground is apparent for disturbing this conclusion.

Notwithstanding all the conflict and rivalry over the fund in controversy, it is pleasing to observe that the entire record sounds no note discordant with the sin-

cere desire of all the persons, societies and corporations involved to devote the proceeds of the trust to real missionary purposes in substantial accord with the desire of the donor. It must be remembered that a supposedly small donation developed into one of considerable size, and the trustee, who seems to have had the management of the trust thrust upon him, was solicitous that when the fund left his hands it should go to a proper and legal successor, and after all the trouble and turmoil it is clear that the great church organization controlling all the societies and auxiliaries which have appeared in the history of the trust has had and will continue to have the benefit of the fund, so that there is no danger of its waste or diversion from the real purposes intended.

Various questions of law and equity were propounded to the trial court and are argued in the briefs, but their further consideration is unnecessary, for enough has been said to show that the real matter in issue—the trustee's allowance—is free from material error of which the plaintiffs can complain.

The items going to others for expenses and attorney fees are of still less difficulty and are approved.

Complaint is made that the trial court, under the guise of retaxing costs, changed the judgment or decree as to these allowances, after the term. But the court stated that the decree was prepared by plaintiffs' attorneys "and was signed by the court without consideration of the matter of costs, and there is undoubtedly authority to retax the costs at the present term." It it proper at any time to make the journal entry speak the truth, and the motion was to correct the record of the judgment so as to make it speak the truth. (*National Bank v. Wentworth,* 28 Kan. 183; *Chemical Co. v. Morrison,* 76 Kan. 799, 92 Pac. 1114; *Graden v. Mais,* 83 Kan. 481, 112 Pac. 107; *The State v. Linderholm,* 90 Kan. 489, 493, 135 Pac. 564.) While so correcting the entry the court retaxed certain costs, and in this there was no error. (*Linton v.*

*Housh,* 4 Kan. 535; *Clippenger v. Ingram,* 17 Kan. 584; *Edwards v. Bank,* 67 Kan. 67, 72 Pac. 534; *Crane v. Cameron,* 71 Kan. 880, 882, 81 Pac. 480, 87 Pac. 466; see, also, *Anderson v. Cloud County,* 90 Kan. 15, 132 Pac. 996; *Meyn v. Kansas City,* 91 Kan. 29, 30, 136 Pac. 898; *Reeves v. Ryder,* 92 Kan. 168, 139 Pac. 1028.)

The decree is affirmed.

MARSHALL, J., and DAWSON, J., not sitting.