170 A.2d 711 (1961)
Jan A. BATA, Defendant Below, Appellant,
v.
Thomas J. BATA, Thomas J. Bata and David Graham, as Executors of the Estate of Mary T. Bata, and Western Investment and Trading Company, Limited, a Bermuda corporation, Plaintiffs Below, Appellees.
Supreme Court of Delaware.
April 25, 1961.
George T. Coulson (of Morris, Nichols, Arsht & Tunnell), Wilmington, Harold E. Stassen (of Stassen, Kephart, Sarkis & Scullin), Philadelphia, Pa., and Amos J. Peaslee, Jr. (of Peaslee, Brigham, Albrecht & McMahon), New York City, for appellant.
Robert H. Richards, Jr. (of Richards, Layton & Finger), Wilmington, and Inzer B. Wyatt, John W. Dickey and Edward C. Stebbins, Jr. (of Sullivan & Cromwell), New York City, for appellees.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*712 SOUTHERLAND, Chief Justice.
The defendant-appellant, Jan Bata, has filed a petition for reargument on seven grounds. The seventh ground embodies a motion to remand the case to the court below in order that the defendant may move the Chancellor to reopen the case and receive newly discovered evidence. Since the motion to remand presents a question not heretofore raised in this proceeding, we consider it first.

Petition to Remand.
The petition advances a new theory of the case, radically different from the issues made by the parties, tried below, and reviewed here. Those issues were as follows:
1. Whether the sale memorandum of May 10, 1931, and the will of May 19, 1931, considered either separately or together, creates a sales legacy in favor of Jan Bata.
2. Whether the Czech doctrine of constitutive recognition is effective to vest title to the Leader shares in Jan.
3. Whether the Czech doctrine of tacit waiver is effective to vest such title in Jan.
Both in the court below and in this Court these issues have been resolved against Jan *713 on the present record. See Bata v. Hill, Del.Ch., 139 A.2d 159; Bata v. Bata, Del., 163 A.2d 493.
In dealing with these questions it was agreed by all parties that the property in dispute, under Czech law, "passed to plaintiffs [Tom and Marie] as the intestate heirs subject to debts and legacies". Appellant's Brief, p. 8.
The new theory of the case on alleged newly discovered evidence is that the May 10th document was a valid offer of a contract effectively accepted after Thomas' death, and that title to the property in dispute  the Leader shares  passed directly to Jan and never vested in the heirs.
We quote from the petition:
"The newly discovered evidence is as follows:
"It was the law in Czechoslovakia in 1931, 1932, 1933 and until 1938, that a unilateral declaration of sale addressed to an intended purchaser holographic and signed by the declarer and placed in a position where it would be received by the intended purchaser after the death of the seller was a valid offer.
"It was further the law in Czechoslovakia in 1931, 1932, 1933 and until 1938 that an offer did not terminate upon the death of the offeror unless the offeror had expressed a contrary intention, or such intent was to be inferred from the circumstances. Such an offer could be accepted validly within a reasonable time after death.
"It was further the law in Czechoslovakia in 1931, 1932, 1933 and until 1938 that when such an offer was accepted after death, the probate court had the jurisdiction and duty to supervise the fulfillment of the contract and to supervise and confirm the provision of the substitute estate or payments for distribution through the deed of delivery. The title to the property sold passed directly to the purchaser and did not vest in the other heirs.
"It was the law in Czechoslovakia in 1931, 1932, 1933 and until 1938 that the May 10th and May 19th documents in the instant case, upon the acceptance of the May 10th document by Jan A. Bata, did constitute a valid contract consummated after the death of Thomas Bata."
The petition is supported by affidavits of six experts in Czech law. Taken at their face value, these affidavits confirm the existence in Czechoslovakia, or at least in Bohemia and Moravia, of the rules of law set forth in the petition.
These affidavits also set forth the following:
These rules constituted a unique feature of Moravian and Bohemian law and a departure or variant from the rules of the Civil Law prevailing in Germany and other areas of Austria-Hungary. They had their origin in a Bohemian and Moravian tradition that peasant farms should descend to a single owner, in order that the farm might not be split up into uneconomic units. This custom, deeply rooted, developed into the rules of law above quoted. A common and accepted method of insuring the transfer from an owner to his successor was the use of such a sales contract as the May 10th document, i. e., an owner's declaration of sale delivered to and accepted by the offeree after the death of the offeror. This was a special method of giving effect to an owner's wishes, standing between an inter vivos contract and a testamentary sales legacy.
This practice was not limited to peasant farms. It was frequently applied in commercial and industrial circles where the owner wished to preserve economic unity.
Therefore, in the opinion of the experts, the May 10th document constituted a valid offer under Czech law, and Jan's acceptance completed a binding contract of sale.
*714 The experts are also of the opinion that the Probate Court at Zlin duly supervised the performance of this contract, and that thereby the property of Thomas listed in the May 10th document became vested in Jan. The deed of delivery of June 28, 1933, vested in the heirs only the remaining property of Thomas Bata, and hence did not give the heirs title to the Leader shares.
The petition thus presents a theory of the case completely new to this proceeding. We shall refer to it as "the tacit-offer" theory, recognizing the inadequacy of this label to express the concept of Czech law.
The petition and affidavits also aver that this evidence of Czech law has never been presented in any of the courts in which this dispute has been litigated, because unknown to Jan and his counsel. In explanation or excuse for such lack of knowledge, the petition avers:
"6. Nor is this surprising, nor is it evidence of neglect, since in the first instance the law and tradition and custom is unique to the area, and the area has been closed throughout the years of this litigation as a result of the Communist takeover in Czechoslovakia. This law and custom and tradition does not apply with the same force throughout Austria, Germany, Switzerland and France. The Civil Law is usually looked upon as a unified whole, and thus this regional variant, grounded in local tradition and custom, was not ascertained previously.
"7. Furthermore, Defendant-Appellant Jan A. Bata was himself a generation removed from the peasant side, had no training in the law, had become deeply engrossed in the Bata shoemaking business at a very early age, and has been completely cut off from Czechoslovakian lawyers and from any opportunity to visit Czechoslovakia since this litigation arose. Unlike his much older brother Thomas, who spanned the transition from Moravian peasant farm owner and shoemaker to industrial urbanite, Jan began as an urban industrial employee and spent much of his youth in the United States. His limited means in the face of the multiplicity of legal attacks, and his remote location in Brazil have combined to make it understandable and excusable that he had not previously obtained this evidence of Czechoslovakian law and custom and tradition."
The plaintiffs oppose the granting of the petition on the following grounds:
1. That the theory of the case now advanced is not newly discovered, but on the contrary was developed and rejected in the prior lawsuits; and with reasonable diligence Jan could have obtained expert testimony in time to present it to the court below in this case.
2. That the Czech Probate Court in this case did not supervise the performance of a contract consummated after Thomas' death, but on the contrary dealt only with a supposed and fictitious inter vivos sale.
3. That the new theory requires a rejection of an express admission by Jan's former counsel in this case that title to the Leader shares passed to Tom and Marie as intestate heirs, and hence a new trial of the entire case.
4. That the present claim of the tacitoffer theory is res judicata by reason of the findings in the New York lawsuit.
Reasons 2, 3 and 4 we find it unnecessary to consider. We think that the first ground of opposition is well-taken.
To succeed upon a petition such as this the applicant must show, among other things, that the newly discovered evidence has come to his knowledge since the trial, and that it could not, in the exercise of reasonable diligence, have been discovered for use at the trial. In re Missouri-Kansas Pipe Line Co., 23 Del.Ch. 215, 2 A.2d 273.
The proffered evidence, consisting of opinions upon rules of Czech law, is advanced *715 in support of the tacit-offer theory, i. e., that the May 10th sale memorandum embodied an offer, and, though it was not communicated to Jan, its validity was unimpaired by Thomas' death, and Jan's acceptance converted it into a valid contract of sale. This theory, although new to this case, is not new to the Bata litigation. It was developed in the prior lawsuits.
In the trial court in New York Jan's then counsel did not advance it, but in rebuttal the heirs' expert testified that the document was invalid under Czech law as an offer because not communicated. The trial court so found. Bata v. Chase Safe Deposit Co., Sup., 99 N.Y.S.2d 535. On appeal, however, new counsel for Jan made the same argument as Jan now makes before us, i. e., he advanced the tacit-offer theory. It was further developed at length in his reply brief. The Appellate Division, however, affirmed Justice Schreiber's findings concerning Czech law and "the absence of any enforcible oral or written contract. Bata v. Bata, 279 App.Div. 182, 108 N.Y.S.2d 659, 660.
The argument was reiterated in the brief for Jan in the Court of Appeals. That Court affirmed, saying: "Both lower courts have found that neither the May 10th writing nor the will constituted a valid enforcible contract under Czech law." 306 N.Y. 96, 115 N.E.2d 672, 677.
In the litigation in Holland, the same argument was developed at length before the District Court and again pressed in the Court of Appeal. In the Swiss litigation it was again advanced.
Enough has been said to show conclusively that the theory of the case now advanced as ground for reopening it is not newly discovered. It was known to Jan's counsel for years before the institution of the Delaware litigation.
Obviously, it was the deliberate decision of Jan's trial counsel here to abandon the contention. In his brief on the law on appeal, he says that Jan "does not challenge the New York determination that there was no enforcible contract". From a subsequent comment, it appears that he regarded the New York determination as res judicata. On that point we do not pass. What we do say is that the new theory was well known and was deliberately abandoned in this case.
In effect, what Jan is contending here is that the legal experts he has heretofore had did not know the Czech law. But, once the theory of tacit-offer had been evolved, why did he not seek to obtain from a Czech lawyer expert advice in support of it? In all probability, reasonable diligence would have borne fruit, since it is clear from the moving papers that some at least of the six affiants were available for consultation before 1954. In any event the effort should have been made if, as is contended, the question was still open for consideration in Delaware. Nothing appears to have been done.
The allegations of paragraph 7 of the petition in excuse of Jan's inaction do not impress us.
The argument upon the supposed difference in background between Thomas and Jan is unconvincing. Thomas' family was centuries removed from the peasant farm. If Thomas was familiar with the legal effect of a "tacit offer", and relied upon it, as Jan must argue, why was Jan himself not familiar with it? When the sale memorandum was found in Thomas' safe, Jan was advised by the notary to sign it, in order presumably to make a binding contract. As to financial stringency, Jan was in a position to retain able counsel to try this case and an expert to testify.
His location in Brazil is within 55 miles of São Paulo, a very large commercial city in which he has an office.
It is true that since the Russian seizure of Czechoslovakia he, like others, has been cut off from his native country; but, again, assistance was available in this country and probably elsewhere.
*716 Jan's real difficulty now stems from the decision to abandon in this case the tacit-offer theory. But that decision was made, and was made at a time when it was still possible (as he contends) for him to press it.
It is true that the affidavits, on their face, make in some respects a rather impressive case. As Jan's counsel says, they tend to throw light upon some of the puzzling features of this matter. But the application comes too late.
The Bata litigation has gone on for thirteen years. The suit in Delaware has lasted seven years. Now, at the last moment, Jan asks us, in effect, to open the door to a re-trial of the case on a theory known to him and his counsel for at least nine years, and expressly abandoned in the Delaware litigation. He has in our opinion failed to show reasonable diligence in obtaining and adducing the new evidence, and hence has failed to comply with one of the fundamental requirements for the granting of the relief he seeks.
The petition to remand to permit a motion to reopen the case is denied.
We turn now to the six other questions raised by the petition for reargument.
I. It is said that our decision in this case is based upon a collateral attack upon the probate proceedings in Czechoslovakia. These proceedings, it is said, were proceedings in rem; they administered and disposed of the estate of Thomas Bata in accordance with the will and sale memorandum left by him, and are conclusive against the World. Williams v. Armroyd, 7 Cranch 423, 432, 11 U.S. 423, 432, 3 L.Ed. 392; Hapai v. Brown, 239 U.S. 502, 36 S.Ct. 201, 60 L.Ed. 407. Hence the title of Jan to the Leader shares, as part of Thomas' estate, was definitely determined in these probate proceedings, and their findings cannot be collaterally attacked.
This contention is new to the Delaware case, but it is not a new idea. It was explicitly presented in the New York litigation, was vigorously pressed, and was rejected by the Supreme Court. On appeal in New York it was abandoned.
There are three answers to this contention.
1. The contention is apparently based upon the same theory advanced in the New York case, i. e., that the Probate Court supervised the fulfillment of an unperformed contract of sale from Thomas to Jan, and delivered to the heirs, by way of the deed of delivery of June 28, 1933, only the "substitute estate" consisting of a claim against Bata a. s.
The first difficulty about this theory is that the probate proceedings were not based upon an unperformed contract of sale, but upon a supposed sale completed in Thomas' lifetime  since determined to be a fiction. It was upon this theory that Jan added to his acceptance of the sale memorandum the phrase: "that is to say, I agreed and purchased as per oral agreement". There is nothing in the probate proceedings about an "unperformed contract". Hence the scope of the deed of delivery was not a recognition of the performance after death of the sale contract, and cannot be res judicata with respect to such performance. "As the proceedings were conducted, there was no obligation of the estate to Jan whose satisfaction the Probate Court was obliged to supervise or determine." Per Mr. Justice Schreiber, 99 N.Y.S.2d 535, 575.
2. Whether Jan's alleged claim to Thomas' industrial property was based on a contract unperformed during Thomas' lifetime, or, alternatively, upon a sale consummated during Thomas' lifetime, is immaterial. In either case the District Court at Zlin had no jurisdiction to determine it, because it involved a sum exceeding 5,000 crowns. For a full discussion of this matter see the opinion of Mr. Justice Schreiber in the New York case. Bata v. Chase Safe Deposit Co., Sup., 99 N.Y.S.2d *717 535, 570-576. We are in accord with his opinion for the reasons therein stated.
3. In the New York case, Jan made the express contention "that the Deed of Delivery, executed by the Czech District Court on June 28, 1933, is `res adjudicata as to plaintiffs and estops them from asserting their present claim of ownership of the property formerly of Thomas Bata, including the shares of Leader.'" 99 N.Y.S. 2d 570. After a thorough consideration of the contention Mr. Justice Schreiber concluded as follows (99 N.Y.S.2d 574):
"Since the District Court of Zlin, which functioned as the Probate Court in connection with the administration of the estate of Thomas Bata, was thus clearly without jurisdiction to determine the merits either of Jan's present claim of a contract unperformed at Thomas' death, or of his claim in the estate proceedings of a contract performed prior to Thomas' death, and since the court was obliged to accept as true and could not question the truth of plaintiffs' declaration in lieu of oath, it is evident that the decree or judgment of the Czech court, though in rem, is not res adjudicata either as to the validity of Jan's claims or as to the composition, extent or nature of Thomas Bata's estate. Cases cited by Jan's counsel for the proposition that a decree in rem is binding are not applicable here, for in those cases the determinations relied upon as conclusive were made by courts which possessed jurisdiction to make said determinations."
This finding is basic to the New York judgment and necessary to the determination of the heirs' title, because the Czech probate proceedings were invoked in that case, as they are now invoked here, as a final determination that title to the Leader shares passed to Jan. The New York finding in effect determined the "ultimate fact" that the heirs took title to the Leader shares under the deed of delivery. Hence it is a determination binding in this proceeding under the doctrine of collateral estoppel. See the comments on this rule in our opinion on the merits. Bata v. Bata, Del., 163 A.2d 493.
For all of the reasons above stated we think that the first ground for reargument is without merit.
As a part of the discussion of this first ground, petitioner adds a contention which seems to have no connection with the effect of the probate proceedings. It is a contention relating to Westhold Corporation and North River Securities Corporation. These Delaware corporations are merely holding companies for certain of the Leader shares. The contention seems to be that because they were organized after Thomas' death and for a period were controlled by Jan, their shares are his property.
Apparently counsel have overlooked that the only function of these corporations has been to hold title to the Leader shares for the benefit of the real owners. See the Chancellor's opinion on the merits. He says:
"The Delaware corporations were created long after Thomas' death. It is agreed, however, that the ownership will follow, derivatively, the determination of ownership with respect to the Leader shares." Bata v. Hill, Del.Ch., 139 A.2d 159, 162.
For the proceedings whereby the shares of these holding companies and the Leader certificates came to be deposited in the Court of Chancery, see the opinion of the Chancellor of March 8, 1955, prior to his opinion on the merits:
"Those controlling North River concede that they hold the certificates [of Leader] for the party  as between Jan versus Tom and his mother's estate  who is determined to be the rightful owner." Del.Ch., 112 A.2d 519, 521.
For a discussion of the status of Westhold, see the opinion of May 6, 1955. Del. Ch., 113 A.2d 740.
*718 It is entirely clear that the separate corporate existence of these two corporations ceased to have any significance by the time the case came on for trial.
Jan's belated assertion of ownership of these corporations is wholly without merit.
II. Jan next invokes, as a citizen of Brazil, the protection of the Treaty of Friendship, Commerce, and Navigation of March 18, 1829, and of the Status of Aliens Treaty of June 6, 1930. By the former treaty each nation guarantees to the nationals of the other free access to judicial tribunals. By the latter, it is provided that states should extend to foreigners individual guarantees extended to their own nationals and the enjoyment of essential civil rights.
To find in these provisions any pertinency to this litigation requires some ingenuity. Certainly Jan has been afforded access to the courts of this country to the same extent as a citizen. What counsel says is that the rights guaranteed by these treaties "include the right to respect for the in rem Czechoslovakian Probate Proceedings", and a "right to proper recognition for the Dutch Decision", and a "right to an independent final determination by the Federal Courts". The contention therefore reduces to a reiteration of the res judicata arguments based upon the prior proceedings. These arguments have been fully dealt with and rejected. It is now sought to reintroduce them in the guise of a federal question.
We see no merit in this contention.
III. Petitioner builds an argument upon one of the items listed in the May 10th sale memorandum. This item reads:
"Bata Matschapai Amsterdam 51,000 Hol.fl."
This, he says, refers to 51% of the shares of Bata Best. The Dutch Court of Appeals held, he says, that these shares belonged to him. Bata Best subscribed to 890 shares of Leader. Therefore, says petitioner, all the shares of Bata Best, and hence the 890 shares of Leader, have been adjudicated as his.
There are several errors and fallacies in this reasoning.
First, Jan had 225 shares in Bata Best.
These were the minority shares. The majority shares  275  were owned by Leader. This is clear, not only from the New York record, but from the case in the Restitution Court, in which Jan complained that the cancellation of the shares issued under the German control would leave control of Bata Best with Leader.
Second, although Bata Best subscribed to 890 shares of Leader, the certificates were deposited in a Zurich bank in the custody of Muska, as we have heretofore pointed out.
Third, the whole contention rests upon the assumption that the Dutch Court of Appeal finding of sales legacy is binding here. This question has been disposed of adversely to Jan.
We find nothing of substance in this contention.
With respect to all three of these contentions we note that none of them was made below, nor was any of them made on appeal. They are brought forward for the first time on reargument. We might have summarily refused to consider them because of the rule forbidding a change of legal theory at such a late stage of the proceeding. See Stephenson v. Commonwealth & Southern Corporation, 19 Del.Ch. 447, 168 A. 211; cf. Kerbs v. California Eastern Airways, 33 Del.Ch. 174, 91 A.2d 62, 34 A.L.R.2d 839.
But petitioner has been required to bring new counsel into the case, because of the death of his former counsel. We have accordingly thought it desirable in this case to deal with these matters on the merits.
IV. The next ground assigned concerns the Parry visit to Jan in Brazil in 1942. This resulted in an agreement for the control *719 by a committee for the duration of the war of certain of the operating companies. This action was the outcome of the placing of Jan Bata on the British blacklist. It was a temporary expedient, devised to meet the difficult situation arising from Jan's refusal to state definitely who were the ultimate owners of the Bata enterprises. This is touched upon in our opinion on the merits. 163 A.2d 500.
The agreement made no attempt to settle the matter of ownership of the Leader shares. It does deal with control, but there has never been any doubt about the fact that after the death of Thomas Jan succeeded to control of the enterprise.
The Parry mission is one of those happenings during the war years which, as the Chancellor said, confuse rather than assist the trial judge in reaching the basic issue.
V. Under the heading of "Other Grounds" the petitioner assails as erroneous the four principal questions dealt with in our opinion of August 3, 1960. No adequate reason is put forward as ground for changing our opinion or granting reargument on any of these points.
VI. Upon the hypothesis that reargument on the merits may be denied, Jan raises again the question of compensation. He cites Williams v. Gibbes, 20 How. 535, 61 U.S. 535, 15 L.Ed. 1013, for the proposition that if A renders service to B in recovering property under the belief that he is the owner of such property, A is entitled, upon the award of the property to B, to compensation out of the fund as a trustee. We have no quarrel with this general proposition. The difficulty is to apply it to the situation in this case. Although Jan filed his claim as a trustee, he was unwilling to give up his claim as owner of the minority shares. We gather that he is still unwilling to do so.
In these circumstances, we are still unable to see how a proper award of compensation can be made until the disputed question of the ownership of those minority shares shall have been determined. See our opinion on this point, 163 A.2d 524. We are not unsympathetic with Jan's position, but we find no reason to change our opinion upon this matter.
Jan contends that the requirement that he abandon his claim to the minority shares as a prerequisite to compensation is an unconstitutional attempt by the Delaware courts to reach property beyond their jurisdiction. On the contrary, the deposit is permissive, and the Chancellor's order, as modified by this Court, will be without prejudice to any future claim of Jan, both as to the minority shares and to compensation.
It is suggested, alternatively, that the Leader shares should be retained in the custody of the court "until the amount of his compensation is determined, * * *". We cannot follow this suggestion. As we have held, the amount of compensation depends somewhat upon Jan's ownership or nonownership of the minority shares. That question cannot be litigated in this proceeding, for the issue is not before the Court of Chancery. Is Jan suggesting that delivery of the Leader shares to the plaintiffs should be withheld indefinitely pending determination, in some proceeding not yet even begun, of the title to the minority shares? Such an order, in our opinion, would be wholly unwarranted.
For the reasons above set forth, the petition for reargument, including the petition to remand the cause to the lower court to permit petitioner to move to reopen it, is denied.
There remains for consideration only a question of costs.
On August 15, 1960, the appellees filed a certification of the costs of printing their appendix.
On August 17, 1960, the appellant filed an application for a special order taxing the costs in this Court against appellees. Appellees filed a memorandum in opposition to this application.
*720 In the court below the Chancellor, citing Kennedy v. Emerald Coal & Coke Co., 27 Del.Ch. 55, 30 A.2d 269, held that the circumstances of this case justified the assessment of costs against the property in the court  or against the successful plaintiffs if they preferred. Bata v. Hill, Del.Ch., 143 A.2d 728, 738.
We are of the same opinion with respect to the costs in this Court. The circumstances of the case are highly unusual. It is unnecessary to set forth all the facts which make the case somewhat analogous to a case in which a fund is before the court for distribution.
Accordingly, the application of appellees that the certified costs be taxed against the appellant is denied.
All of the costs in this Court will be taxed against the appellees.
In accordance with the order of the Chief Justice of January 13, 1961, the issuance of the mandate of this Court is stayed for a period of ten days from the date of filing this opinion, in order to permit petitioner to make the application referred to in that order.