# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BLANCHE NEWBORN,<br>Individually and as Executrix of the<br>Estate of Lindsay Hurley Ballas,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIANA PSYCHIATRIC<br>SERVICES, P.A. and LEATRICE S.<br>ALBERA, as Executrix of the<br>Estate of Jorge A. Pereira-Ogan, M.D.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. N16C-05-047 VLM |

## ORDER

Submitted: January 9, 2017
Decided: January 25, 2017

*Upon Consideration of Defendant Leatrice S. Albera, as Executrix of the
Estate of Jorge A. Pereira-Ogan, M.D.'s Motion to Reconsider the Court's
November 30, 2016 Order.* **GRANTED.**

AND NOW this 25th day of January, 2017, upon consideration of Defendant Leatrice S. Albera, as Executrix of the Estate of Jorge A. Pereira-Ogan, M.D's Motion to Reconsider the Court's November 30, 2016 Order, the response thereto, and the parties' oral arguments, **IT IS HEREBY ORDERED** that the Motion to Reconsider the Court's November 30, 2016 Order is **GRANTED** for the following reasons:

1. On November 30, 2016, this Court entered an Order ("Order") granting, in part, Defendants' and the State/Division of Professional Regulation's Motions to Quash and for a Protective Order.[1] Specifically, Plaintiff, Blanche Newborn, Individually and as Executrix of the Estate of Lindsey Hurley Ballas ("Plaintiff"), successfully argued, in part, that she should be permitted access to documents related to a former investigation of Jorge Pereira-Ogan, M.D. ("Dr. Ogan"). Defendant Estate of Jorge A. Pereira-Ogan, M.D ("Estate") now moves pursuant to Superior Court Civil Rule 59(e) for Reargument/Reconsideration.

2. Briefly, this case involves a wrongful death and medical malpractice action against the Estate's decedent, Dr. Ogan, and his former practice group, Defendant Christiana Psychiatric Services, P.A. ("CPS", collectively "Defendants"), alleging that Dr. Ogan provided negligent medical treatment to Plaintiff's decedent, Ms. Ballas, which caused her to commit suicide in August 2014.[2]

3. As part of the inquiry into Ms. Ballas' death, an investigation regarding her professional and personal relationship with Dr. Ogan ensued. For purposes of this Motion, the relevant State agencies that participated in the

---

[1] *See* D.I. #59892622 [hereinafter Order].

[2] Order at 3-4.

investigation included the Division of Forensic Science (formerly known as the "Office of the Chief Medical Examiner" or "OCME"), the Board of Medical Licensure and Discipline ("Board"), the Division of Professional Regulation ("DPR"), and the Department of Justice ("DOJ").

4. After filing her civil claim, Plaintiff issued a subpoena to DPR and Deputy Attorney General Stacey Stewart of the DOJ seeking the production of DPR's investigative file. In response to this subpoena, DPR inadvertently forwarded the file to Plaintiff's counsel.[3] When counsel for the State and DPR noticed this mistake, both the State and DPR filed their respective Motions to Quash and for a Protective Order.[4] Defendants filed their joint Motion to Quash and for Protective Order shortly thereafter.[5]

5. In this Court's Order, Plaintiff was permitted access to portions of DPR's investigative file. Specifically, the Court permitted discovery of Ms. Ballas' medical records that were incorporated into the DPR file.[6] The Court

---

[3] Order at 12-13.

[4] DPR did not file its own Motion to Quash, but later joined the State's Motion to Quash and for Protective Order following oral arguments on the Motions.

[5] The Motions were consolidated and oral arguments were heard on the Motions on November 1, 2016.

[6] DPR's investigative file contained Ms. Ballas' mental health/psychiatric records from Dr. Ogan's time in solo practice. These records were transferred to CPS's records department and turned over to DPR as part of its investigation.

further permitted discovery of what had been represented as Dr. Ogan's statements made to the DPR during its investigation.[7]

6.  Of particular relevance to this Motion, this Court determined that Delaware's peer review privilege, 24 *Del. C.* § 1768, did not apply to bar discovery of Dr. Ogan's statements in the present civil suit.[8] The facts—as they existed at that time—established that DPR initiated its investigation into Dr. Ogan absent evidence of any involvement by the Board.[9] Thus, DPR, in its capacity as an independent investigator, was not operating as the mandatory investigatory arm of the Board and this Court held that the file was not subject to the peer review privilege.[10]

7.  The Estate now moves under Superior Court Civil Rule 59 for this Court to reconsider its ruling on the basis of newly discovered evidence. The Estate has reviewed the DPR file and now represents that the Board—and not DPR—initiated the investigation into Dr. Ogan after two email complaints were

---

[7] Order at 22-23.

[8] Order at 13-17 (discussing peer review privilege and holding DPR was not acting as "peer review committee or organization" when it investigated Dr. Ogan).

[9] Order at 15 ("In this case, DPR received the initial complaint regarding Dr. Ogan without the involvement of the Board. . . .").

[10] Order at 15-16.

4

filed with DPR in mid-November 2014.[11] The Estate further clarifies that the original representations that there were statements of Dr. Ogan in the investigative file are actually notations made by a DPR investigator following his communications with Dr. Ogan. As such, the statements sought to be protected are more akin to the investigator's impressions than actual statements provided by Dr. Ogan.

8.     Plaintiff opposes the Motion on both procedural and substantive bases. Although Plaintiff concedes that the peer review privilege does apply when the Board initiates an investigation, she argues that this new evidence should not be considered because a motion to reconsider "seeks only a re-examination of the facts in record at the time of the decision or the law as it applies to those facts."[12] Notwithstanding this general rule, however, "[i]n appropriate circumstances . . . a litigant may seek reargument based on newly discovered evidence."[13] The burden is on the moving party to show the newly discovered evidence "came to his

---

[11] The Estate confirmed that Dr. Ogan's correspondence with the Division of Forensic Science/OCME occurred before the initiation of the Board's investigation in mid-November 2014. The Estate therefore concedes that this correspondence is not subject to the peer review privilege and, thus, is discoverable. The Court's ruling in this Order focuses only on the documents produced for the purposes of the Board's investigation into Dr. Ogan after the Board initiated its investigation in mid-November 2014.

[12] Plaintiff's Response at ¶ 7. *See Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995) (quoting *Maldonado v. Flynn*, 1980 WL 272822, at *3 (Del. Ch. July 7, 1980)).

[13] *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4644708, at *1 (Del. Ch. Dec. 31, 2007) (citing *Bata v. Bata*, 170 A.2d 711, 714 (Del. 1961)).

knowledge" since the motion and could not, "in the exercise of reasonable diligence, have been discovered for use at the time" of the motion.[14] Plaintiff also argues in the alternative that the Estate has not met its burden of proving that this new evidence, even if considered, would change the outcome of this Court's decision. Specifically, Plaintiff maintains that the information in the DPR file was not used exclusively by the Board in its investigation and, therefore, the peer review privilege does not apply.[15] This Court finds both grounds unavailing.

9. Superior Court Civil Rule 59(e) permits the Court to reconsider "its findings of fact, conclusions of law, or judgment."[16] "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[17] To prevail on a motion for reargument, the movant must demonstrate that "the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[18] Further, "[a] motion for reargument is not a device for raising new

---

[14] *Id.* (citing *Bata*, 170 A.2d at 714).

[15] *Cf. Office of Chief Med. Exam'r v. Dover Behavioral Health Sys.*, 976 A.2d 160, 164 (Del. 2009) (quoting *Connolly v. Labowitz*, 1984 WL 14132, at *1 (Del. Super. Dec. 17, 1984)) (the peer review privilege applies to records, including "any paperwork, reports or compilation of date [sic] which are used *exclusively* by the [peer review] committee.").

[16] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969). *See also Bd. of Managers of Del. Criminal Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003); *Cummings v. Jimmy's Grille, Inc.*, 2000 WL 1211167, at *2 (Del. Super. Aug. 9, 2000).

[17] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Apr. 27, 2007).

[18] *Bd. of Managers of Del. Criminal Justice Info. Sys.*, 2003 WL 1579170, at *1.

arguments,"[19] nor is it "intended to rehash the arguments already decided by the court."[20] Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching closure on the issue.[21] The moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[22]

10.     Given the immunity and privilege issues in the underlying Motions, the Estate took the position in the earlier Motions that the contents of the DPR's investigative file were absolutely privileged under 24 *Del. C.* § 1768 and, accordingly, *could* not review it. Only after this Court's ruling did the Estate view the contents of the file.[23] The Estate's review of the file revealed new evidence— contrary to what had been represented at the oral arguments on the underlying Motions to Quash and for Protective Order—that the Board, and not DPR, initiated the investigation into Dr. Ogan. Accordingly, the Court finds that the Estate has met its burden of proving that these new facts constitute "newly discovered

---

[19] *Id.*

[20] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[21] *See Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Jan. 14, 2004).

[22] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995).

[23] Notably, the contents of the file had been inadvertently disclosed to Plaintiff's counsel in advance of the earlier Motions. At no time during oral argument on the earlier Motions to Quash or for Protective Order did any of the parties or non-parties suggest that the Board had initiated this investigation. Plaintiff's counsel maintained that there was no evidence to suggest that the Board had initiated the investigation, claiming it was only tangentially involved.

7

evidence" that could not have been discovered in the exercise of reasonable diligence.[24]

11. This Court further finds that, had this evidence been presented, it would have changed the outcome of the Court's Order. Most important to the analysis of the applicability of the peer review privilege was where the Board fit into this investigation. The new evidence demonstrates that the Board initiated the investigation into Dr. Ogan. As such, since DPR acted as a mandatory investigator of the Board, DPR is clothed with the peer review privilege pursuant to 24 *Del. C.* § 1768(a).[25]

12. This new evidence also now requires the Court to consider the previously mooted issue of whether the Board exclusively used the DPR file within the scope of § 1768(b).[26] Section 1768(b) applies to all records, including "any paperwork, reports . . . which are used *exclusively* by the [peer review]

---

[24] The Court disagrees with Plaintiff's reliance on both Court of Chancery cases *Miles, Inc. v. Cookson America Inc.*, 677 A.2d 505 (Del. Ch. 1995), and *Maldonado v. Flynn*, 1980 WL 272822 (Del. Ch. July 7, 1980). Both cases are distinguishable. *Miles* involved a post-trial opinion where the Court held the Rule 59 arguments merely rehashed arguments presented during trial. *Maldonado* concerned an affidavit that could have been discovered with reasonable diligence.

[25] 24 *Del. C.* § 1768(a) ("The Board of Medical Licensure and Discipline and the Medical Society of Delaware, their members, and the members of any committees appointed by the Board or Society; . . . .").

[26] *See* Order at 16 n. 46.

committee."[27] This qualification on § 1768(b)'s scope recognizes "the Legislature's purpose in enacting the statute[:] to prevent the chilling effect caused by the prospect of public disclosure of statements made to, or information prepared for and used by, medical review committees in the accomplishment of their assigned tasks. . . ."[28]

13.    To that end, Delaware law codifies substantial privileges for the inner workings of the Board, notwithstanding the Board's need to engage other State agencies to assist in its investigatory and disciplinary functions. For instance, the Board is required by law to investigate complaints "concerning any aspect of the practice of medicine against a person [licensed] to practice medicine in this State. . . ."[29] Among other statutory requirements, the Board must communicate monthly with the DOJ regarding "the status of complaints filed by law enforcement. . . ."[30] Additionally, the Board's records are exempt from Freedom of Information Act requests.[31] Finally, and of particular relevance to this Motion, § 1768(b) provides that: "[I]n cases in which any disciplinary action by the Board was issued, the

---

[27] *Office of Chief Med. Exam'r v. Dover Behavioral Health Sys.*, 976 A.2d 160, 164 (Del. 2009) (emphasis added) (quoting *Connolly v. Labowitz*, 1984 WL 14132, at *1 (Del. Super. Dec. 17, 1984)).

[28] *Dworkin v. St. Francis Hosp., Inc.*, 517 A.2d 302, 307 (Del. Super. 1986).

[29] 24 *Del. C.* § 1733(a).

[30] § 1733(a)(2).

[31] § 1737. *See also* 29 *Del. C.* § 10002(l)(3).

9

formal complaints prepared by the Delaware Department of Justice and the results of the hearings are not confidential and are public records. . . ."[32] Logic, therefore, suggests that the structure of § 1768(b), read in conjunction with the Board's statutory duties, permits the Board to engage in interdepartmental communication regarding a pending investigation of a medical practitioner without the Board unwittingly relinquishing its right to the peer review privilege. To read § 1768(b) as strictly as Plaintiff contends functions to cabin § 1768(b) and the Board's functions too narrowly.

14. In this case, the results of DPR's investigation culminated in two formal complaints filed by the DOJ against Dr. Ogan. The new evidence demonstrates that the Board initiated the investigation and provided assistance to the DPR investigator assigned. The Board provided the investigator a Board member to review the findings of the investigation. The results of the investigation were then forwarded to the DOJ for potential prosecution. DOJ ultimately chose to file two formal complaints with the Board regarding Dr. Ogan's conduct. However, the DOJ withdrew the formal complaints because Dr. Ogan passed away. This process—from initiation of the investigation until the filing of the formal complaints—followed the anticipated process recognized in § 1768(b) and

---

[32] 24 *Del. C.* § 1768(b).

10

the Board's enabling statute.[33] Therefore, the Court finds that this new evidence shows that the Board used the contents of DPR's investigative file exclusively within the confines of the peer review privilege.

15. Consequently, the two formal complaints filed by the DOJ after DPR's investigation are confidential and not discoverable.[34] Since the Court finds that the peer review privilege applies to the file, and that the file was exclusively used by the Board, § 1768(b)'s language controls: "Notwithstanding the foregoing, *in cases in which any disciplinary action by the Board was issued*, the formal complaints prepared by the [DOJ] . . . are not confidential and are public records. . . ."[35] Since the DOJ withdrew the formal complaints before the Board issued a disciplinary action, the necessary implication from § 1768(b)'s language is that the two formal complaints remain confidential and not subject to discovery.[36]

---

[33] *See* § 1768(b). *See also* §§ 1710-1715 (enabling statute).

[34] *See* § 1768(b).

[35] *Id.* (emphasis added).

[36] Additionally, the Court finds the parties' clarification concerning the nature of Dr. Ogan's statements in the investigative file significant. At the time of the Order, Dr. Ogan's putative statements were reportedly formal statements authored, recorded, or otherwise verbalized by Dr. Ogan to a DPR investigator. The parties now represent to the Court that the one statement in the investigative file derives from notes made by the DPR investigator about his communications with Dr. Ogan. This characterization of the statement bolsters the privileged nature of the information contained in the investigative file.

11

The Court finds that the Estate has met its burden under Rule 59(e) of demonstrating that the new facts in the DPR file constitute newly discovered evidence permitting the Court to reconsider its Order. The Court further finds that this new evidence is sufficient to change the outcome of the Court's Order. Therefore, the Estate's Motion to Reconsider the Court's Order is **GRANTED**.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   All Counsel of Record (via e-filing)

12