THOMAS J. BATA et al., Respondents, *v.* JAN A. BATA, Appellant, et al., Defendants.

First Department, December 4, 1951.

*Henry Cohen* of counsel (*Jonathan B. Bingham, Rudolf B. Schlesinger* and *Richard E. Colby* with him on the brief; *Cohen, Bingham & Stone,* attorneys), for appellant.

*Inzer B. Wyatt* of counsel (*Robert MacCrate* and *Charlotte W. James* with him on the brief; *Sullivan & Cromwell,* attorneys), for respondents.

VAN VOORHIS, J. In affirming the judgment determining plaintiffs to be the owners and entitled to the immediate possession of the certificates representing the 826 shares of stock of the Swiss corporation known as Leader A.G., which are the subject of this action, we affirm the findings of fact incorporated in the able opinion of Mr. Justice SCHREIBER concerning the applicable Czechoslovakian law, the absence of any enforcible oral or written contract for the sale of his holdings from Thomas Bata to Jan A. Bata, the devolution of the legal title to Thomas Bata's ownership in the Bata enterprises upon his death to his widow and son, Marie and Thomas J. Bata, the absence of any determination against them constituting *res judicata* in the courts of Czechoslovakia, the inapplicability of the cited Czechoslovakian Statutes of Limitation, and that the evidence fails to establish that Jan A. Bata ever had actual or constructive possession of the 826 Leader A.G. shares in suit under claim of right. The applicable Czechoslovakian law is so different from ours, that what was done there is in no sense analogous to probating Thomas Bata's alleged will.

Other litigations between these parties are pending concerning the ownership of other securities in Bata companies, which are not *sub judice* in this action. We make no attempt to determine what effect, if any, the decision of this action may have upon such controversies. We do not rest our affirmance of the

judgment in this action, however, upon any findings that plaintiffs were not informed at or soon after the death of Thomas Bata of the truth concerning the paper dated May 10, 1931, purporting to constitute a sale of all of his property to J. A. Bata for 54,300,000 crowns, nor concerning his will dated May 19, 1931, which were found in his safe, nor concerning his previous wills, nor upon any reliance by plaintiffs or either of them upon the validity of any alleged oral agreement to sell between Thomas and Jan A. Bata, nor that Jan A. Bata defrauded plaintiffs in what he did subsequent to his brother's death until 1939, and whatever particular statements are contained in the opinion that constitute findings of ultimate fact to those effects should be reversed.

It is rather clear that Thomas Bata operated his enterprises, both inside and out of Czechoslovakia, as though he were the sole proprietor thereof, even after the formation of Bata a.s. and Leader A.G. during the year before his death. He was advanced in his thinking regarding employee relationships, but, insofar as the management was concerned, he believed that authority should be concentrated in a single head. He apparently intended that upon his death his mantle should fall upon the shoulders of his brother, who bore the name of Bata, but that his son, then seventeen years old, should be trained to succeed Jan A. Bata in the same role. The so-called agreement of sale dated May 10, 1931, and the will of Thomas Bata dated May 19, 1931, appear to have been designed chiefly, as Mr. Justice SCHREIBER has said, for tax purposes. The alleged oral agreement between the two Bata brothers appears to have had the same motivation. Thomas Bata probably considered that otherwise the large estate or inheritance taxes payable upon his death in Czechoslovakia would disrupt the family control of his enterprises. Whether a tax fraud was perpetrated upon the Czechoslovakian Government, which has now confiscated all of the assets in Czechoslovakia, is something that is not at issue in this lawsuit. It may well be that transactions were fabricated to give the appearance of a transfer of title in all of the companies which Thomas Bata had held to Jan Bata, in the expectation that he would treat it as a mere simulacrum and do what was right as between himself and his brother's widow and son. If that was the intention, however, or whatever may have been

the situation, it is too much to believe that Marie Bata and her son were not cognizant of it. They all endeavored to carry out what they understood to be the wishes of Thomas Bata, for whom everyone concerned held the highest regard, until Thomas Bata, Jr., and Jan A. Bata fell out in 1939 when Jan attempted to discharge Thomas from the organization. It is not significant in this case whether their disunity resulted from the stresses of war, the desire of Jan A. Bata to remain upon friendly terms with the Nazi government which had occupied the country in which their principal factory was located, or from other causes. Prior to this time, Jan Bata had advanced Tom in the business and had carried out, it may be assumed, to all intents and purposes his brother's wishes for plaintiffs without much regard to where the proprietary interest in the enterprises lay.

There is no occasion to rehearse the other evidentiary facts which are so carefully set forth in the opinion of Mr. Justice SCHREIBER. We hold that the trial court correctly penetrated the fiction which was erected, whether for tax purposes or otherwise, and determined rightly that title to these 826 shares of Leader A.G. passed to plaintiffs. The conduct of the parties did not alter the actual devolution of these shares. We do not pass upon whether the Statute of Limitations would have run, nor upon whether plaintiffs would have been equitably estopped from asserting title if it had been established that Jan A. Bata had held possession of these shares under claim of right, and had been induced to assume corporate or other responsibilities inuring to the benefit of plaintiffs, in reliance upon words or conduct calculated to lead him to believe that they were conceding ownership in him to any particular security or securities. It is, of course, true that plaintiffs have never been paid 50,000,000 crowns which are referred to in the will as the purchase price of the alleged sale to Jan Bata. That, in itself, would prevent the declaration by plaintiffs in lieu of oath, and other conduct in the estate proceedings in Czechoslovakia, from operating by themselves as an estoppel. A defendant, even in an action at law, is entitled to interpose whatever defenses he has, whether they were formerly denominated legal or equitable (Civ. Prac. Act, § 262). Upon this point we hold simply that an equitable estoppel has not been established with respect to these 826 shares of Leader A.G. stock.

The judgment appealed from should be affirmed, with costs. Settle order.

DORE, J. (concurring). The dissent is based " primarily " on the written memorandum of May 10, 1931. But by the terms of that memorandum the consideration to be paid by Jan for the alleged " sale " was fifty million Czech crowns and this by the express language of the memorandum Jan was " obligated to pay in cash within one year after taking over the companies ". This record establishes that Jan never personally paid anything in cash or otherwise out of his own funds for this " sale ". As Jan failed to pay any part of the consideration required by the document, that document cannot be any sound basis to support his claim to the shares controlling a vast business enterprise which the trial court estimated to be worth between thirty and fifty million dollars at the time of the alleged sale, nor any fair basis for dismissing the complaint of Thomas' widow and son.

For the reasons stated in the comprehensive and able opinion of the learned trial court, I vote to affirm.

SHIENTAG, J. (dissenting). I dissent and vote to reverse and to dismiss the complaint. This case was presented on a record containing over 2,000 pages of testimony and exhibits; the briefs in this court alone cover over 550 printed pages. The case has many ramifications and I shall not attempt in a dissenting opinion to make any detailed analysis of the issues presented. The case was carefully tried below and both sides given ample opportunity to present their respective contentions as to the facts and the law. I must accept the decision of the trier of the facts so far as issues of credibility solely are involved. Indeed, in view of the long delay of about fifteen years in instituting this action, the only safe thing to do, it seems to me, is to rely solely on the documentary evidence and on the uncontradicted acts and conduct of the parties and such inferences as may fairly and reasonably be drawn therefrom.

The action is primarily one in replevin, the plaintiffs seeking to recover certain certificates of stock in a foreign corporation known as Leader A.G. The dispute as to the legal title to these certificates is between the plaintiffs, the widow and the son of Thomas Bata ( his heirs at law and next of kin), and the defendant, Jan Bata, the half brother of the deceased), who had grown up with the business since he was a boy and who, at the time of

the death of Thomas Bata, occupied a position of high authority in the business. I have reached the conclusion that the plaintiffs have failed to establish by a fair preponderance of the evidence their legal title to the certificates of stock in controversy. No claim is here made of any express trust binding upon the defendant, Jan Bata, nor is it sought to impose a constructive trust upon him. The issue as I see it is one of legal title to the shares.

I base my dissent primarily upon the proposition that by the written memorandum dated May 10, 1931 (and by the confirmatory provisions of the will of Thomas Bata, deceased, dated May 19, 1931), all of his business interests, including the Leader shares, were sold to the defendant for a named consideration. This memorandum found in decedent's safe immediately after his death, in an envelope addressed to Jan Bata, provided for the sale of certain described domestic companies and of a specific list of foreign holdings (in which the Leader shares were not included) and then went on to say that except as to certain specifically described assets which were excluded (and the Leader shares were not so excluded): "I [Thomas Bata, the deceased] sell to you [Jan Bata, his half brother and the defendant herein] all my property whatsoever even if it is not named here for the amount of Kc. 50,000,000 fifty million Kc. in Czechoslovak currency."

The will also found in the safe, in a separate envelope, was a definitive testamentary instrument entirely in the handwriting of the testator purporting on its face to dispose of all of his property. It recited his property " as of today " (that is May 19, 1931) and mentioned as part of his property a claim against Jan A. Bata " for all shares in domestic and foreign companies sold — Kc. 50,000,000 ". It then enumerates his other assets, such as his dwelling in Zlin, his country estates, his claim against the City of Zlin, and makes provision for his wife and his minor son (somewhat but not much more than they would be entitled to by Czech law). It also contains a specific bequest to his sister and to the workers at the factory. This will was acknowledged to be a valid testamentary instrument and was probated as such by a court of competent jurisdiction without any objection being taken thereto. After the death of Thomas Bata, the defendant Jan took over the entire industrial empire which had been built

up by the decedent; no step was taken to question the validity of the sale or its scope or effect until about fifteen years thereafter.

Among the assets or properties owned by the decedent were the Leader shares before mentioned, the title ownership of which was concealed through various devices. My interpretation of the record leads me to conclude that, despite the attempted concealment, the decedent who owned these Leader shares purported to sell them, together with his other assets and business properties as recited in the memorandum of sale and the confirmatory provisions of his will  That the decedent did not intend to exclude this stock from the sales seems to me to be indicated in the memorandum of sale and in the will; and the acts and conduct of the parties thereafter show that this likewise was their interpretation of these documents.

The plaintiffs, in my view, have failed to establish that these Leader shares were not included in the sale to Jan Bata but were assets of the decedent undisposed of by him and as to which he, in effect, died intestate. If my view is correct, the plaintiffs gained nothing by the " declaration of heirship " on June 8, 1933, or by the " Deed of Delivery " of decedent's estate to them by court decree on June 28, 1933. The deed of delivery could confer upon the plaintiffs no greater legal title to the certificates than the estate of the decedent itself possessed.

Why the decedent should have made the disposition of his property in the way he did, why he should have gone to such pains to conceal his ownership of the Leader stock, rests, in the last analysis, more or less upon speculation, although both sides to this controversy have their divergent views about it. The fact is that the decedent did make this disposition. It was so understood and acquiesced in for many years.

The parties fully acquiesced in the method of payment that was adopted: credits on the books in favor of the plaintiffs, carrying interest and payable on demand, which could be and were, to the extent desired, drawn against by the plaintiffs. Indeed such credits formed the basis of a subsequent suit by the plaintiff Thomas J. Bata against Bata a.s. and its successor in Canada.

To sum it up, I fail to find sufficient basis in the record to warrant a holding that the legal title to the stock in controversy

is in the plaintiffs. The judgment below should be reversed and the complaint dismissed.

HEFFERNAN, J., concurs with VAN VOORHIS, J.; DORE, J., concurs to affirm in separate opinion; SHIENTAG, J., dissents and votes to reverse and dismiss the complaint in opinion in which GLENNON, J. P., concurs.

Judgment affirmed, with costs. The findings of fact contained in the decision at Special Term by SCHREIBER, J., affirmed to the extent stated in the opinion by VAN VOORHIS, J. (DORE, VAN VOORHIS and HEFFERNAN, JJ., concur except that DORE, J., votes to affirm such findings and all other findings made by SCHREIBER, J.; GLENNON, J. P., and SHIENTAG, J., dissent and vote to reverse all material findings of SCHREIBER, J.); findings of fact of SCHREIBER, J., reversed to the extent stated in opinion by VAN VOORHIS, J. (GLENNON, J. P., VAN VOORHIS, SHIENTAG and HEFFERNAN concur, except that GLENNON, J. P., and SHIENTAG, J., vote to reverse these and all of the material findings made by SCHREIBER, J.; DORE, J., dissents from the reversal of said findings and votes to affirm all findings of SCHREIBER, J.) Settle order in accordance herewith.