## Otto, Appellant, *v.* Powers.

Argued October 5, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*H. Durston Saylor, II*, with him *George V. Strong* and *Strong, Sullivan, Saylor & Ferguson*, for appellant.

*Theodore R. Mann*, with him *Maximillian J. Klinger*, for appellees.

OPINION BY WOODSIDE, J., January 14, 1955:

This is an appeal from the refusal of the court below to grant a new trial and enter judgment n.o.v. after verdict for the defendants.

Judgment had been entered in favor of the plaintiff and against the defendants in the amount of $2126 on a judgment note under seal. After petition to open the judgment, it was opened upon agreement of counsel. Complaint was then filed by plaintiff, followed by

defendants' answer setting up the affirmative defense of duress. After reply the case was tried before a jury which found for the defendants.

The plaintiff is the brother of Kathryn R. Powers one of the defendants. The two of them along with their father had title to the premises where the two resided. Plaintiff claims his sister promised to live with him "until he got well," but later she and her husband, the other defendant, decided to move into a home of their own.

The evidence shows that when she told her brother of their intentions, he got "mad" and "excited." He insisted that she and her husband give him a note for the value of her interest in the house. He cursed her and threatened her saying: "You know, one more dead body won't make any difference to me."

Mrs. Powers was pregnant at the time and expected her child any day. When her brother behaved thus, she testified, "I got so excited that I just wanted to get out of there without anything happening." Two or three days later she went to her lawyer and explained her brother's demand and conduct. Although he advised her against signing the note she insisted upon his preparing it. She, and later her husband who was similarly advised by the lawyer not to do so, signed the note which was subsequently delivered to her brother.

Plaintiff admits there was no consideration for the note, but it was under seal which did import consideration. It required evidence of fraud or duress in the execution of the note to vitiate it. [1]

[1] The Uniform Commercial Code of April 6, 1953, P. L. 3 was not the law of this Commonwealth when the note in question was delivered. Section 3-113, 12A PS §3-113 of the code bears on this subject. The Pennsylvania Bar Association notes found in Purdons under the section contain the following:

The appellant claims there was insufficient evidence to establish the affirmative defense of duress. The evidence of duress referred to above was clearly sufficient to support the jury's finding.

Appellant argues that since the defendants had an opportunity to consult counsel and did so, as a matter of law there can be no duress because the threat under such circumstances cannot be imminent nor can the person threatened be without means of protecting against the execution of the threat.

He relies primarily upon *Palatucci v. Woodland,* 166 Pa. Superior Ct. 315, 320, 70 A. 2d 674 (1950) from which he quotes the following: "There could be no duress where the contracting party is free to come and go and to consult counsel."

As pointed out by Judge KUN in the opinion of the court below, "this case and the three cases cited therein are distinguishable. There are different types of duress. One consists of improper threats of various types of legal action. Another consists of threats of actual bodily harm. In each of the cases where the Court has said there can be no duress where a party had the opportunity to consult counsel the alleged duress has been of the former type, while in the matter before us, the duress was of the latter type. Where one is threatened with a legal action which, if pursued,

"Accord: §8 (4) N.I.L., 56 P.S. §8 (repealed). Pennsylvania cases under the N.I.L. have held that the presence of a seal does not destroy the negotiability of an instrument and are to that extent in accord with this section: Balliet v. Fetter, 314 Pa. 284, 171 Atl. 466 (1934) ; see First Nat'l Bank v. Albright, 111 Pa. Super. Ct. 392. It is to be noted, however, that the provision that a sealed instrument is 'within this article' would make available the defense of want of as well as failure of consideration which would be contrary to the prior Pennsylvania law: Independent Coat Company v. Michalowski, 349 Pa. 349, 37 Atl. 2d 518 (1944) ; Rynier's Estate, 347 Pa. 471, 32 Atl. 2d 736 (1943)."

would be improper, consultation with a lawyer would promptly set the party right and the lawyer would advise the party of any actual legal rights, and he could act accordingly. On the other hand, when one's life is threatened, as in the case before us, by an ominous suggestion that 'one more dead body won't make any difference to me', it would be little comfort to know that if he were killed the slayer would have committed an illegal act. In such a case consulting a lawyer could have no more effect than consulting any other person, whose advice though proper would not necessarily allay the fear of the one whose life was threatened. For these reasons it is our opinion that the cases cited by the plaintiff are inapplicable to the facts in the case before us. In this situation the element of a continuing fear on the part of the defendant sister, dealing with an apparently irrational brother, is also involved. This has to do with the point made by the defendants of the three-day delay between the threats and the signing of the note.

"Comment (c) of section 492 of the Restatement of Contracts (which section was cited with approval in Palatucci v. Woodland, supra) states: 'The length of time that elapses between the act or threat which is asserted to amount to duress, and the transaction attacked is likewise important only as evidence bearing on the issue of whether fear produced by the act or threat continues to operate at the time that the transaction is entered into, in such force as to preclude free judgment. A state of such fear may continue long after the threats that cause it, but in determining the probability of this, time, distance, opportunity to obtain disinterested advice and protection are all important.'

"In other words, the three-day lapse of time was an element for the jury to consider in determining whether duress existed at the time the judgment note was

signed. It was not of itself, however determinative, and the jury having found for defendants, it cannot now be a basis for setting aside the verdict and granting a new trial.

"As to the defendant husband's liability, it was not a case of imputing duress; rather it was a case of a threat to a wife constituting duress on the husband."

Appellant argues to us that the lower court overlooked that the plaintiff might have been arrested and put under a bond to keep the peace. If fear of criminal penalty would not deter a person, how would the fear of forfeiting a bond? If the defendant feared violence from her brother, no action on the part of her lawyer to put him under bond would alleviate such fear.

Furthermore, it is important that defendant was about to give birth to a child. Her first concern at the time was undoubtedly her own health and its effect upon her unborn child. Naturally her husband, too, was moved to sign the note so there would be no further disturbance at that critical time.

In *Molony v. Matthews,* 86 Pa. Superior Ct. 370 (1926) this court pointed out that in cases of this kind, ". . . it must be made to appear that such intimidation existed either as the result of personal infirmity or from circumstances likely to coerce a person of ordinary firmness. The quality of firmness is assumed to exist in every person competent to contract unless it appears that by reason of old age or other sufficient cause he is weak or infirm."

The firmness which might normally be expected of the defendants in this case could not be expected at the time when the threats of the plaintiff were made to them.

The appellant complains of the court's charge, contending it was not clear as to the defendants' burden of establishing the affirmative defense of duress, and

was otherwise inadequate. No exceptions were taken to the charge nor were its alleged inadequacies raised in the motion for a new trial.

An examination of the charge shows no basic and fundamental error, which under these circumstances would be necessary before we could grant a new trial.

At several places in the charge the court suggested that the evidence must be sufficient for the jury to find that there was legal duress. If the plaintiff felt the question of burden of proof should have been phrased more accurately it was his duty to request it.

Judgment affirmed.