## Bata *v.* Central-Penn National Bank of Philadelphia (et al., Appellant).

Argued April 26, 1966. Before BELL, C.J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 6, 1966.

*Harold E. Stassen* and *A. Evans Kephart*, with them *Roger A. Johnsen*, for appellant.

*George M. Brodhead*, with him *Peter C. Paul*, and *Rawle & Henderson*, for bank, appellee.

*Lewis H. Van Dusen, Jr.*, with him *Morris R. Brooke*, *Robert MacCrate*, and *Drinker, Biddle & Reath*, and *Sullivan & Cromwell*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 15, 1966:

On March 27, 1962, Thomas J. Bata and the late Jan A. Bata executed a settlement agreement purporting to terminate fifteen years of almost continuous litigation.[1] The agreement provided that the parties

---

[1] The genesis of this controversy actually dates back to the 1932 death of Thomas Bata, a citizen of Czechoslovakia, who was survived by his widow, a son, Thomas J. Bata, the present appellee, and a half-brother, the late Jan A. Bata, the present appellant. During his life Thomas Bata had immensely expanded the family's

would exchange stock certificates and instruments of assignment in various Bata companies, that they would execute comprehensive general releases as well as some 150 special releases, and that they would terminate each of the thirteen lawsuits then pending between them. In addition Thomas J. Bata agreed to pay Jan the sum of $3,400,000 of which $2,700,000 was paid upon the execution of the agreement and the remaining $700,000 placed in two escrows of $200,000 and $500,000. Central-Penn National Bank was named escrow to hold moneys and documents until the conditions of release and delivery were performed.

shoe business into an international enterprise which at the time of his death was worth between $30,000,000 and $45,000,000. *Bata v. Bata*, 163 A. 2d 493, 496 (Del. 1960); *Bata v. Bata*, 306 N.Y. 96, 99, 115 N.E. 2d 672, 673 (1953). In order to avoid taxes, the profits from the foreign corporations were accumulated in foreign banks and the records documenting the expansion of Bata's wealth were concealed. For reasons peculiar to Czechoslovakian inheritance law, which would permit his estate to escape heavy taxation, Jan A. Bata, with the consent and knowledge of Thomas J. Bata, assumed title to his half-brother's enterprises under a fictitious prior oral contract of sale. *Bata v. Bata*, 163 A. 2d 493, 497, 517 (Del. 1960); *Bata v. Bata*, 306 N.Y. 96, 104-07, 115 N.E. 2d 672, 675-77 (1953).

For several years all went well and the business continued to thrive as a family concern. However, around the outbreak of the Second World War, friction developed between Thomas J. and Jan, which eventually led to conflicting claims of legal ownership. In 1947 the first suit was filed in Switzerland by the present appellee; the parties have been engaged in almost constant litigation since. During this period the courts of Switzerland, the Netherlands, England, New York, and Delaware, among others, have considered various aspects of this controversy. A more complete history of the dispute will be found in the recorded opinions of the New York and Delaware courts, *Bata v. Hill*, 139 A. 2d 159 (Del. Ch. 1958), aff'd sub nom. *Bata v. Bata*, 163 A. 2d 493 (Del. 1960), reargument denied, 170 A. 2d 711 (Del.), cert. denied, 366 U.S. 964 (1961); *Bata v. Chase Safe Deposit Co.*, 99 N.Y.S. 2d 535 (1950), aff'd sub nom. *Bata v. Bata*, 279 App. Div. 182, 108 N.Y.S. 2d 659 (1951), aff'd 306 N.Y. 96, 115 N.E. 2d 672 (1953).

. In June 1963, Jan A. Bata performed the conditions contained in the first escrow and received the $200,000; he was to receive the remaining $500,000 upon terminating a pending English lawsuit, transferring shares of British Bata Shoe Co., Ltd. to Thomas J. Bata, and registering the bearer shares of Dutch Bata Shoe Company. When it became apparent that these conditions were not going to be performed, Thomas J. Bata brought an action in equity seeking specific performance. Initially the action was removed to a federal district court, but was subsequently remanded to the Court of Common Pleas of Philadelphia County.[2] In his answer Jan A. Bata denied that the settlement agreement required him to co-operate in terminating the English suit and, under new matter, raised the affirmative defense that the settlement agreement was void because it was entered into as the result of duress, coercion, and the force of adverse judgments which were themselves fraudulently obtained in other jurisdictions. In addition, appellant filed a counterclaim in which he reaverred the allegation of fraud and prayed that the court, inter alia, adjudge him "to be legally and equitably entitled to the ownership of all of the shares of the 'Bata Enterprises.'" The lower court granted appellee's motion for judgment on the pleadings and this appeal was prosecuted on behalf of Jan A. Bata and by Jan T. Bata, his successor in interest.[3] For reasons stated

[2] *Bata v. Central-Penn National Bank*, 223 F. Supp. 91 (E.D. Pa. 1963).

[3] On this appeal Jan T. Bata objects to his substitution under Pa. R. C. P. 2352 as the duly appointed successor to his father, Jan A. Bata. Shortly after Jan A. Bata's death, his counsel informed appellee and the court of this fact and specifically indicated that Jan T. desired to be substituted as a party and intended to take the necessary formal steps. Thereafter Jan T. with the approval of both the court and appellee participated as an active party in all aspects of the controversy. We are of the view that

378.

hereinafter we are compelled to affirm the decree of the court below.

Under Pa. R.C.P. 1034, a motion for judgment on the pleadings may be granted in cases which are so free from doubt that a trial would clearly be a fruitless exercise. Such a motion is in the nature of a demurrer; all of the opposing party's well-pleaded allegations are viewed as true but only those facts specifically admitted by him may be considered against him. *Bureau of Child Care v. United Fund of Philadelphia,* 416 Pa. 617, 207 A. 2d 847 (1965); *Poole v. Great American Ins. Co.,* 407 Pa. 652, 182 A. 2d 509 (1962). Unlike a motion for summary judgment,[4] the power of the court to enter a judgment on the pleadings is further circumscribed by the requirement that the court consider only the pleadings themselves and any documents properly attached thereto. *Nederostek v. Endicott-Johnson,* 415 Pa. 136, 138, 202 A. 2d 72, 73 (1964); *Emery v. Metzner,* 191 Pa. Superior Ct. 440, 445, 156 A. 2d 627, 630 (1959).

In the present case the pleadings are quite extensive because of a large volume of exhibits attached by the parties, the authenticity of which has been admitted by both sides. Because of their complexity, before this and the lower court, it is necessary to delineate precisely what aspects of the record, in addition to the stipulated facts and exhibits, we may presently consider. By his motion for a judgment on the pleadings appellee sought a favorable judgment both with respect to his own complaint and to defendant's counterclaim. As to the former we may consider only the complaint and appellant's answer, including the new matter, but with respect to the latter, we may consider appellant's counterclaim, the reply (appellee's answer containing

by these actions Jan T. met the requirements of Pa. R. C. P. 2352(a) for voluntary substitution.

[4] Pa. R. C. P. 1035.

new matter relating to the counterclaim), and the counter-reply (appellant's answer to the new matter). *Herman v. Stern,* 419 Pa. 272, 276, 213 A. 2d 594, 596 (1965) ; *Luria Steel & Trading Corp. v. Dittig,* 414 Pa. 197, 199 A. 2d 465 (1964).

Despite appellant's assertion to the contrary, the language and spirit of the settlement agreement clearly envisioned that he would fully cooperate in terminating the English action. Indeed he himself recognized this when he wrote to his English solicitors on March 27, 1962, and left to their discretion the manner in which they and appellee's solicitors would settle the action. While appellant later, in a letter signed by his counsel and dated February 18, 1963, withdrew his consent to the termination, the validity of this withdrawal depends upon appellant's principal claim that the entire settlement agreement is unenforceable as induced by fraud, duress, and coercion.[5] In the procedural posture of this case, however, we are confronted not with the merits, as such, but solely with the issue of whether the allegations were sufficiently pleaded to warrant a trial.

Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation nor offered simply to harass the opposing party and to delay the pleader's own obligations. For this reason our rules require that fraud in either a complaint or reply must be "averred with particularity." Pa. R.C.P. 1019(b). Admittedly the line between pleading facts and evidence is not always bright; therefore, we frequently condone the inclusion of statements, which except for this requirement, would be considered impertinent. See *Williams v. Rose,* 403 Pa. 619, 170

---

[5] The authenticity of the agreement as well as the correspondence, which are included as exhibits to appellee's pleadings, are admitted by appellant.

A. 2d 577 (1961) ; *Custis v. Serrill,* 303 Pa. 267, 272, 154 Atl. 487, 489 (1931) ; Goodrich-Amram §1019(b)-1 (1962). While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge. See *Sokoloff v. Strick,* 404 Pa. 343, 172 A. 2d 302 (1961) ; *Hornsby v. Lohmeyer,* 364 Pa. 271, 72 A. 2d 294 (1950) ; *Rice v. Braden,* 243 Pa. 141, 89 Atl. 877 (1914). Especially when viewed against the background of the prior litigation, our reading of the pleadings in this case, particularly the averments of fraud, duress and coercion contained in appellant's answer, confirms the conclusion of the court below that they are "an exercise in obfuscation."

In seeking to avoid his remaining obligations under the settlement agreement, appellant appears to be making three separate arguments, although each is related to the issue of fraud. First he alleges that his assent to the agreement is invalid because it was the direct result of duress and coercion exerted by the appellee prior to and during the negotiations. In addition he maintains that the principal inducing factor was the force of adverse judgments which are alleged to have been obtained through "gross fraud" perpetrated on the courts of sister jurisdictions. Finally he asserts inadequate consideration to support the agreement. We shall discuss each argument separately.

Appellant's assertion that he was under duress or coercion when he signed the agreement is singularly without merit. Aside from the fact that these allegations are unparticularized, we find it inconceivable that appellant was subject to any degree of restraint or danger, let alone an amount sufficient to invalidate

his assent. See *Yulsman v. DuBois,* 346 Pa. 310, 30 A. 2d 323 (1943); *Smith v. Lenchner,* 204 Pa. Superior Ct. 500, 205 A. 2d 626 (1964). Duress is "that degree of restraint or danger, either actually inflicted or . . . impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Smith v. Lenchner,* supra at 504, 205 A. 2d at 628. The pleadings establish that this is not a case where an ignorant person, unrepresented by a lawyer, was forced into an unconscionable settlement by the threat of economic catastrophe; rather it is one where the party seeking to avoid is an experienced litigant who, during the entire period of negotiations, was represented by able counsel. Cf. *Otto v. Powers,* 177 Pa. Superior Ct. 253, 110 A. 2d 847 (1955). Moreover, in June 1963, four months after appellant's counsel withdrew his consent to terminating the English action on the ground of fraud, appellant completed the conditions of the $200,000 escrow and received the benefits thereunder. There is no allegation that at this time appellant was under any form of duress; thus, his actions must be viewed as a ratification of the agreement and a waiver of any claim of duress. See *Thorne's Estate,* 344 Pa. 503, 25 A. 2d 811 (1942); Annot. 77 A.L.R. 2d 426 (1961). However, with respect to the alleged fraud, the ratification merely extinguished his right to rescind; all other remedies, including the relief prayed for in the counterclaim, remained unimpaired. *Tilghman v. Dollenberg,* 418 Pa. 604, 610, 213 A. 2d 324, 327 (1965); *Sixsmith v. Martsolf,* 413 Pa. 150, 196 A. 2d 662 (1964).

As a result of "newly discovered evidence" acquired since March 1962, appellant claims that the adverse judgments rendered in Switzerland, Delaware, and New York were obtained solely by reason of appellee's gross fraud upon these courts. This evidence is all directed to challenging the conclusions reached

in prior litigation that the purported transfer from Thomas Bata to Jan Bata in 1932 was fictitious, a sham transaction engaged in solely for the purpose of insulating the value of the Bata Enterprises from Czechoslovakian inheritance taxes. *Bata v. Hill,* 139 A. 2d 159, 201, 204 (Del. Ch. 1958), aff'd sub nom. *Bata v. Bata,* 163 A. 2d 493, 497, 519 (Del. 1960), reargument denied, 170 A. 2d 711 (Del.), cert. denied, 366 U.S. 964 (1961) ; *Bata v. Chase Safe Deposit Co.,* 99 N.Y.S. 2d 535 (1950), aff'd sub nom. *Bata v. Bata,* 279 App. Div. 182, 108 N.Y.S. 2d 659 (1951), aff'd 306 N.Y. 96, 115 N.E. 2d 672 (1953). In particular appellant points to the transcript of a 1942 meeting between the United States Government and representatives of the Bata Enterprises, including appellee, and to certain documents from the Czechoslovakian files relating to the estate of Thomas Bata. These documents he contends clearly establish the validity of the merits of his claim and their alleged suppression is indicative of the fraud perpetrated by the appellee upon other courts.

However, the Delaware Supreme Court considered other documents concerning the events to which the 1942 conference report relates, concluding that they were not probative on the issue of ownership. The chancellor's conclusions, adopted verbatim by the Supreme Court, preclude appellant's reliance on that document: ". . . much of the evidence of happenings during the war years confuses rather than assists in reaching the basic issue [control of stock in a Bata corporation]. It represents actions taken for a purpose (to avoid seizure as enemy property) which is not necessarily related to the dispute here." *Bata v. Hill,* 139 A. 2d 159, 204 (Del. Ch. 1958), aff'd sub nom. *Bata v. Bata,* 163 A. 2d 493, 525 (Del. 1960).

Appellant's averments with respect to the documents supposedly shedding new light, under Czechoslovakian

law, on the succession of control following Thomas Bata's death in 1932 are also effectively answered by the Delaware Supreme Court in its opinion denying reargument. After first observing that the theory advanced in the petition for reargument while new to the Delaware litigation was not new to the Bata litigation, the Court concluded: "Enough has been said to show conclusively that the theory of the case now advanced as ground for reopening it is not newly discovered. It was known to Jan's counsel for years before the institution of the Delaware litigation.

"Obviously, it was the deliberate decision of Jan's trial counsel here to abandon the contention. In his brief on the law on appeal, he says that Jan 'does not challenge the New York determination that there was no enforcible contract.' From a subsequent comment, it appears that he regarded the New York determination as *res judicata.* On that point we do not pass. What we do say is that the new theory was well known and deliberately abandoned in this case." *Bata v. Bata,* 170 A. 2d 711, 715 (Del. 1961). The settlement agreement must also be viewed as an abandonment, since the reported opinions reveal that the theory advanced by appellant in this litigation is likewise not new.

Thus none of the evidence offered by appellant suggests any reason for viewing the adverse judgments as being fraudulently obtained or subject to further attack. Moreover, for a party to challenge an adjudication on the basis of newly discovered evidence, it is imperative that the evidence be of such a nature that it could not have been obtained at the time of trial by an exercise of reasonable diligence and that its introduction alone is likely to have had a significant impact on the result. *Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 26, 131 A. 2d 622, 625 (1957). When the evidence is used, in support of a theory of fraud, to challenge a final judgment, it must further be shown

that the alleged fraud prevented the complaining party from making a full and fair defense. *Culbertson's Estate,* 301 Pa. 438, 447, 152 Atl. 540, 543 (1930).

After fifteen years of exhaustive litigation, we are unwilling, on the vague allegations contained in appellant's pleadings, to adjudge the studied conclusions of numerous tribunals a nullity. While appellant does not suggest that we deny recognition to these judgments, he does urge that appellee should be denied all benefits to be derived from them, including the enforcement of the settlement agreement. Appellant's argument, however, completely misses the mark because the only way for us to determine the validity of his assertion is to first consider if the judgments were indeed fraudulently obtained. This in turn requires us to consider appellant's contention as being in the nature of a collateral attack; otherwise we would be forced to completely ignore the judgments and relitigate the precise issues determined elsewhere, namely, who is entitled to ultimate ownership of the Bata Enterprises.

Appellant's final defense that the agreement is invalid for lack of consideration is premised upon the conclusion that everything which passed to him as a result of the agreement was in fact his property. In view of what we have already said this contention is easily dismissed.

Inasmuch as a judgment on the pleadings denies a party the right to fully develop his theories and averments at trial, a motion to that effect should be denied if a proper and seasonable amendment will cure pleading defects. *Jefferies v. Hoffman,* 417 Pa. 1, 5, 207 A. 2d 774, 776 (1965). Hence we must also consider whether the court below was correct in denying appellant leave to amend. While the right to amend is within the trial court's discretion, there is a well accepted practice which favors permitting amendments,

especially at the pleading stage. Stated generally, the rule at this juncture is that leave to amend should be granted unless it would result in an error of law or in prejudice to the opposing party. *Jefferies v. Hoffman,* supra; *Schaffer v. Larzelere,* 410 Pa. 402, 406-07, 189 A. 2d 267, 270 (1963) ; *Cucinotti v. Ortman,* 399 Pa. 26, 30, 159 A. 2d 216, 218-19 (1960).

The present case, however, is one in which the court was acting well within its discretionary range in denying leave to amend. The record reveals that this action was originally instituted in July 1963, removed by appellant to the federal district court, and remanded in November 1963. Shortly after remand appellant requested permission to substitute a new answer for the one he had filed with the district court. After briefs were filed and oral argument heard, the court granted appellant permission to file his new answer in order to meet our requirement that averments of fraud be pleaded with particularity. Pa. R.C.P. 1019(b). This answer, filed in September 1964, amounted to an amended pleading. In December, appellee moved for judgment on the pleadings. Seven months later, more than two years after the commencement of the action, appellant again requested permission to amend, but this time the court denied the request.[6] No matter how liberal an amendment policy we adopt, in fairness to both sides, a party may not be permitted to drag out the pleadings indefinitely.[7]  Cf. *Cucinotti v. Ortman,*

[6] Appellant also was denied leave to amend his pleadings after judgment was entered.

[7] In order to give appellant every benefit of the doubt the court again heard argument and requested briefs on the proposed amendments. The court was also well within its discretionary range in denying leave to amend on the additional ground that amendments would not have advanced appellant's position. See *Gettemy Homestead Ass'n of Westmoreland,* 356 Pa. 475, 480, 52 A. 2d 325, 327 (1947).

supra; *Schlosser v. Weiler,* 377 Pa. 582, 105 A. 2d 331 (1954); *Compton v. Heilman,* 331 Pa. 545, 1 A. 2d 682 (1938).

Appellant also complains of the court's failure to permit him to take the depositions of appellee and his expert on Czechoslovakian law and to rule favorably on his motion to compel appellee to produce certain documents in order to assist him in making his allegations of fraud more specific. These motions were made a year apart. Our discussion of appellant's right to amend is in part dispositive of this point, for in the words of the court below: "If the fraud allegedly perpetrated was of the 'gross proportion' claimed by defendant Bata, he must have sufficient information to plead the same. . . . Further examination for discovery purposes at this stage would make a mockery of the proceedings had over a period of many years. Defendant's motion for discovery leads to the conclusion of harassment and bad faith."

So far we have considered primarily the complaint in equity. Since appellant's counterclaim involved the same issues, judgment on the pleadings was also properly granted with respect to it.

Despite the 1962 settlement agreement, appellant has persisted in advancing his claim to control of the Bata Enterprises. Settlement agreements are designed to forestall not foster litigation, and while like any other contract, there are circumstances under which they may be avoided, these circumstances do not include thinly veiled averments of fraud and duress, whose purpose is to conceal disappointment with the settlement. *Voloshen v. Mann,* 392 Pa. 253, 140 A. 2d 450 (1958); *Schlosser v. Weiler,* 377 Pa. 582, 105 A. 2d 331 (1954); *Yulsman v. DuBois,* 346 Pa. 310, 30 A. 2d 323 (1943). The orderly administration of justice requires that the protracted litigation which culminated in a total settlement by the parties now

be deemed concluded. Appellant has suggested no grounds which will permit him to once again take up the sword of litigation.

The decree of the court below is affirmed. Costs on appellant.

Mr. Justice COHEN concurs in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.