REED, J.,
— Plaintiff’s complaint in assumpsit seeks reimbursement from defendant of the sum of $3,996, under a construction contract between the parties. The written contract is made part of plaintiff’s complaint. Plaintiff alleges that under its contract it was required to pay only that portion of the fee for building permit attributable to its contractual obligation, but that it had to pay the whole fee computed on the whole job let to four prime eon tractors, of which plaintiff was one.
Defendant filed an answer admitting all of plaintiff’s allegations, except one. Plaintiff filed a motion for judgment on the pleadings, which motion is now before the court en banc.
On motion for judgment on the pleadings by plaintiff, the court will confine itself to the pleadings, accepting as true all well-pleaded averments of fact which are admitted by defendant’s answer, and will enter judgment only where the right thereto is free from doubt, and so clear that a trial would be a fruitless exercise: Bata v. Central-Penn National Bank of Philadelphia et al., 423 Pa. 373, 224 A. 2d *83 174 (1966) (cert. denied 386 U.S. 1007; 87 S. Ct. 1348); Goldman et al. v. McShain, (1968), 247 A. 2d 455.
The pleadings yield these undisputed facts. Plaintiff and three other contractors not named in this suit signed separate contracts with defendant to construct an addition and make alterations to the existing Springfield High School Building. (The pleadings do not allege whether or not all the contracts were identical.) The total amount of work for completion of the proposed project by all involved entailed a total contract price of $2,698,954 for labor, materials and extras. Of this amount, $1,699,648 was to be done by plaintiff.
A township ordinance governing the construction of buddings and structures made it unlawful to begin construction until an application for a building permit embracing all work had been submitted by the owner and a building permit obtained. The fee for such a permit would be computed upon the total price for all the proposed construction, without regard to the breakdown among various contractors.
All four contractors were prime contractors, and no contractual relationship existed or was created among them or between any of them. Plaintiff was starting contractor, and went to procure the permit. He offered to pay $6,890, representing the fee on his contract of $1,699,648; this was refused by the township. He then paid the total fee of $10,886 computed on the entire contract value of the job $2,698,954, but before doing so, notified defendant and the other three prime contractors of what he was doing, under protest, in order to get construction started.
The amount he now seeks to recover is the dif *84 ference between these two sums, $10,886 less $6,890, or $3,996 with interest from September 16,1969.
The single variant between the complaint and answer may be stated: Was plaintiff bound by the contract to pay the total permit fee?
At paragraph 9 of plaintiff’s complaint it is alleged:
“The defendant [School District] herein did not obtain a building permit for its proposed project.”
Defendant answered:
“Admitted and in further answer thereto, it is averred that by contract with the Defendant, the Plaintiff was obligated to seek, pay for and obtain all permits required, all as set forth in the general conditions of the contract in section 4.7.1 of Exhibit ‘A’ attached to Plaintiff’s Complaint.”
Also at paragraph 18, plaintiff alleges refusal of defendant to reimburse him; and defendant admits this is so, but claims no legal duty, which is repetition of defendant’s answer to paragraph 9, and further adds that the obligation of reimbursement falls upon the other three contractors, who apparently defendant alleges plaintiff should sue.
Resolution of the issue depends upon interpretation of the contract, made part of the complaint, at section 4.7.1 referred to in defendant’s answer. The court will initially interpret a contract to determine if there is a fact question for a jury, or a legal question for the court’s decision under the circumstances of the case: Miami National Bank v. Willens, 410 Pa. 505, 190 A. 2d 438 (1963).
Section 4.7.1 of the contract between plaintiff and defendant reads:
“The Contractor shall secure and pay for all per *85 mits, governmental fees and licenses necessary for proper execution and completion of the Work.”
The key word in this section is: “the Work,” and at section 1.1.3 “The Work” is defined:
“The term Work includes all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated or to be incorporated in such construction.”
Further at section 1.1.4, the contract specially defines “The Project” to mean the total construction, of which the work performed under the contract documents may be the whole or a part. The contract draws a distinction between the work plaintiff will do, and all the work contemplated to complete the entire job — the project.
The pleadings establish that plaintiff did not contract for the whole work, only a part. Three others admittedly shared the balance as prime contractors.
The entire contract leads to but one reasonable conclusion, that the word “Work” at section 4.7.1 can mean only that which plaintiff contracted to do. Furthermore, paragraph 11 of plaintiff’s complaint, admitted by defendant, states:
“The general conditions of plaintiff’s contract (see Section 4.7.1 of Exhibit A) require that plaintiff shall secure and pay for all permits necessary for the proper execution and completion of the work covered by plaintiff’s contract.”
Had that section 4.7.1 been drafted to cover the scope defendant contends, the word “the Project” would have been used, not “the Work,” or in a single contractor situation “project” and “work” would have been synonymous.
Hence, we rule as matter of law that the building *86 permit fees which the contract bound plaintiff to pay covered only fees for the work he contracted to do, in this instance $6,890 and no more.
Defendant admits that it (defendant) did not obtain a building permit for the project — all the work — : (See paragraph 9 and answer, supra.)
Plaintiff might have sued the other three prime contractors on a theory of unjust enrichment, but he is not obligated to do that. Defendant should have joined the other three contractors as additional defendants, but it has not done that, although it may still have a cause against them, if defendant pays plaintiff.
There is no question of fact for a jury to resolve as between plaintiff and defendant. Plaintiff was legally bound to pay $6,890, and no more. We cannot however, find upon what legal reasoning defendant has a duty to reimburse plaintiff for the excess payment. Curiously, neither plaintiff nor defendant addressed themselves to this issue, nor do they plead a basis for it.
Because plaintiff has a right to recover the excess paid, and defendant neither pleads this defense, nor joins the other contractors, it may be that defendant has admitted a duty, though unclear to us. The state of these pleadings and the conclusions we reach therefrom, pose finally a dilemma which we must resolve to afford both plaintiff and defendant opportunity to protect their respective interests. Hence, the order we now enter.
ORDER
And now, February 26, 1971, it is ordered that defendant School District is granted 20 days from *87 the date hereof to join the three prime contractors, admitted by the pleadings to be existent.
And, it is further ordered, that if defendant fails to join the said three contractors as additional defendants, plaintiff’s motion for judgment on the pleadings shall be granted upon praecipe of plaintiff that defendant has failed to do so, and thereupon judgment shall be entered in favor of plaintiff and against defendant in amount of $3,996 with interest from September 16, 1968, at six percent per annum.