North Star Coal Company *v.* Waverly Oil Works Company, Appellant (et al., Appellant).

242

Argued September 28, 1971. Before Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Maurice Louik* and *Edmund K. Trent,* with them *David M. Harrison, Harrison & Louik,* and *Reed, Smith, Shaw & McClay,* for appellants.

*Roger Curran,* with him *Rose, Schmidt and Dixon,* for appellee.

Opinion by Mr. Justice Pomeroy, March 20, 1972:

This appeal is from a judgment on the pleadings declaring terminated and of no effect an oil and gas lease in which defendant has a lessee interest, enjoining defendant from carrying on any operations on the leased premises, and directing that it remove its equipment therefrom. From the pleadings the following appears:

Plaintiff (herein "North Star") purchased the property in question, some 229 acres, in September, 1960, from one George C. Kuehnert. The deed was made under and subject to an oil and gas lease which had been

entered into in 1891 between James Mevey (also referred to as McVey) Kuehnert's predecessor in title, as lessor, and John A. Steel and M. C. Egbert (also referred to as N. C. Eghart), as lessees. This lease was for a term of five years "or as long thereafter as oil and gas is found in paying quantities". The lease provided that it would become null and void if the lessees should "at any time cease to operate on the above premises for the continuous space of six months".

The complaint alleged that defendant Waverly Oil Works Company ("Waverly") was "successor in interest to the original lessees",[1] and that it had forfeited the lease under the six months clause, and also that the lease had automatically terminated because oil and gas were no longer to be found in paying quantities. Waverly by its answer: (1) admitted that drilling had stopped for a period in excess of six months, but stated that this was made necessary to protect two producing gas wells from the blasting operations of a coal stripper operating under lease from North Star; (2) averred that the lease had not been abandoned, as evidenced by its repair of an oil tank before receipt of North Star's Declaration of Forfeiture and the resumption of drilling as promptly as possible following backfilling by the stripper; and (3) averred that Kuehnert had reserved to himself the royalties under the lease, so that North Star had no interest therein and was attempting by this suit to defraud those rightfully entitled to the royalty interest.[2]

---

[1] The answer did not respond one way or another to the allegation that Waverly was successor in interest to the original lessees, and hence this could be taken as admitted by the chancellor in considering the motion for judgment. As will appear, however, Waverly is not the sole successor lessee.

[2] The answer did not purport to set up any affirmative defense by way of new matter. Defendant later petitioned to amend its answer to include new matter, but the petition was refused for the

The chancellor concluded that the answer did not set forth a valid defense to the complaint, and accordingly granted plaintiff's motion for judgment on the pleadings.[3] This appeal followed.[4]

Pending appeal but before the argument, a petition for leave to intervene as a party appellant was filed with our Court by Pennzoil-United, Inc. which, after answer by North Star, was duly granted.[5] The Pennzoil petition to intervene asserts, *inter alia,* without contradiction by North Star in its answer, that South Penn Oil Company (Pennzoil's predecessor) became the assignee of the Steel-Egbert lease in 1902, that Waverly is assignee from South Penn of the right to drill for and produce oil and gas on the leased premises only from the "shallow sands" thereunder, and that South Penn retained all such rights with respect to the

---

reason that, in the opinion of the chancellor, the averments sought to be included therein were only explanatory of the averments in the answer, and would not, as a matter of law, comprise new matter. The propriety of this ruling, which was contained in the order entering judgment on the pleadings for plaintiff, is not specifically objected to by appellant.

[3] The docket entries indicate that both sides filed interrogatories, but the decree does not refer to them as a basis for the decision. North Star, appellee, has printed its interrogatories Nos. 10(e) and (f) and 17 and the answers thereto, as a supplement to the record on appeal, but these add little, if anything, to the pleadings.

[4] The chancellor, The Honorable David Olbum, died after this appeal was taken but before filing an opinion in support of his decree.

[5] Pennzoil averred that it first learned of this suit and the judgment of the court below in May, 1971. The petition was filed August 30, 1971. North Star charged that this constituted laches, and that in any event it did not appear that Pennzoil had a substantial, immediate and pecuniary interest in the outcome of the case such as to warrant its becoming a party. Pennzoil was permitted to argue and to file a brief in support of its position that the decree should be reversed.

"deep sands". The petition further alleged, without denial, the death of George C. Kuehnert in 1961 and that one-half of his royalty interest in the Steel-Egbert lease was devised by will to Kuehnert's two children, who had in turn conveyed the same to one Blair E. Bell, and that the other one-half interest was now owned by one Paul Ciaffoni. The petition, after reciting various statements from the pleadings, asserted that if not permitted to intervene, Pennzoil might lose its right to produce oil and gas from the deep sands of the leased premises without having been given an opportunity to defend.

There can be no doubt that the judgment on the pleadings was entered in error, and must be reversed. This would have been true even as matters stood prior to the Pennzoil intervention. The answer to the complaint, while formally deficient in not setting up defenses by way of new matter (a defect which Waverly sought unsuccessfully to cure), was sufficient to indicate that at least the following factual and legal questions required determination before judgment for plaintiff could be entered:

(1)  Did Kuehnert, as alleged by Waverly in its answer, reserve the royalties from the oil and gas lease to himself? If so, is the reversionary interest in that lease in Kuehnert, his heirs and assigns, or is it in North Star? The answer to this question requires at the minimum an examination of the full text of the deed to North Star, which is not of record. On the answer depends, of course, North Star's standing both to declare a forfeiture of the lease and to bring this suit to declare it terminated.

(2)  If North Star has no interest in the royalties, can it undertake to declare a forfeiture without the consent of the royalty owners (Kuehnert's heirs, successors or assigns) or without making them parties defendant? Whether such consent has been given and

who are the present owners of the royalty interest did not appear in the record before the lower court.

(3) Is it true that the cessation of operations between May, 1964 and September, 1966, admitted by Waverly, was to protect producing sands from the effects of coal stripping operations, and were these operations, including blasting, at the insistence of plaintiff's own coal stripping lessee? If so, a question of estoppel to declare a forfeiture would be presented and require determination.

In addition, the Pennzoil intervention makes it clear that Waverly is not the complete successor to the oil and gas lease in dispute, as the complaint alleged, but that Pennzoil itself retains some interest therein. The court decree, however, purported to terminate not only the Waverly interest, but the entire original lease of 1891 from McVey to Steel and Egbert. As it now appears, this it could not do without Pennzoil in court as an indispensable party defendant.

We do not here pass on the merits of any part of this suit. We hold merely that both on the record of this case in the lower court and on the expanded record now before this Court, there are unknown and possibly disputed facts, some of which we have mentioned, which must be established. Judgment on the pleadings should be allowed only where a case is free from doubt and trial would be a fruitless exercise. *Blumer v. Dorfman*, 447 Pa. 131, 289 A. 2d 463 (1972) ; *Bata v. Central-Penn Nat. Bank of Phila.*, 423 Pa. 373, 224 A. 2d 174 (1966).

The decree is reversed and the case is remanded for further proceedings consistent with this opinion. Costs on appellee.

The former Mr. Chief Justice BELL took no part in the consideration or decision of this case.

The former Mr. Justice BARBIERI took no part in the decision of this case.