437 A.2d 415

**SUN OIL COMPANY OF PENNSYLVANIA,**

v.

**Julius BELLONE and Violet S. Bellone, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1981.

Filed Nov. 13, 1981.

342

Robert H. Kutz, Greensburg, submitted a brief on behalf of appellants.

David C. Pohland, Greesburg, for appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

DiSALLE, Judge:

Appellee, Sun Oil Company of Pennsylvania (Sun), as lessee/purchaser, instituted this action against appellant, Violet S. Bellone (Bellone),[1] as lessor/vendor for the specific performance of an option to buy certain real property. The lower court granted appellee's motion for judgment on the pleadings, Pa.R.C.P. 1034, finding that appellee had properly exercised its option to purchase the property, and that once the option had been exercised, a valid contract of sale was created. Appellant claims that the lower court erred. We disagree.

It is fundamental that a judgment on the pleadings should not be entered when there are unknown or disputed issues of fact. *North Star Coal Co. v. Waverly Oil Works Co.*, 447 Pa. 241, 288 A.2d 768 (1972). When reviewing the

1. Julius Bellone, one of two captioned appellants, is deceased.

pleadings and relevant documents, *see, SN, Inc. v. Long,* 208 Pa.Super. 38, 220 A.2d 357 (1966), this court must treat the motion as if it were a preliminary objection in the nature of a demurrer. *Trost v. Clover,* 234 Pa.Super. 255, 338 A.2d 630 (1975).

The pleadings reveal the following facts: On February 28, 1961, Bellone entered into a lease/sale agreement with Sun.[2] This agreement contained two option provisions. Paragraph 7(d) of the agreement provided:

(d) That Company shall have the option to purchase at any time during the term of this lease or any renewal thereof, the said leased premises, together with all buildings, improvements and equipment erected thereon and owned by Lessor for the sum of Forty-Two Thousand Dollars ($42,000.00).

Upon receipt of said purchase price, after deducting therefrom any sums due Company by Lessor, Lessor shall convey (by general warranty deed) and transfer to Company said premises, buildings, improvements and equipment, free and clear of all liens, easements, restrictions and encumbrances, and title thereto shall be good and marketable and such as will be insured, at usual rates, by a reputable title insurance company, satisfactory to Company. Lessor further agrees, in such event, to assign, transfer, and set over unto Company, to the extent he may legally do so, all governmental permits, licenses and privileges pertaining to the use of said premises and the buildings and improvements erected thereon.

This is known as a fixed price option. Paragraph 7(e) of the agreement provided:

(e) In the event the Lessor desires to sell the within demised premises or other property owned by Lessor of which this is a part at any time during the term hereof or any renewal thereof and receives therefor a bona fide offer of purchase acceptable to Lessor, Lessor shall notify Company in writing of said offer of purchase and Compa-

2. Sun was then Sun Oil Company, but is now Sun Oil Company of Pennsylvania.

ny shall have the right to meet said bona fide offer by giving Lessor notice in writing of its intention so to do within thirty (30) days after receipt of said offer in writing. Upon the payment of said purchase price Lessor shall convey to Company a good and marketable title to said property free and clear of all liens and encumbrances of whatever kind and character and such as will be insured by a reputable title company at its usual rates, by a good and sufficient deed with full covenants and warranty of title covering the real estate and a good and sufficient bill of sale covering the personal property. In the event of the sale of this property to other than the Sun Oil Company, this lease shall in no way be affected. The option set forth in this paragraph shall be continuous and shall be binding upon all successors in title during the term of this lease or any renewal or extension thereof.

This is generally referred to as a purchase refusal option or right of first refusal option.

█ On December 5, 1979, prior to the expiration of the final lease renewal term, Bellone notified Sun that she intended to terminate the lease as of June 13, 1980.[3] On January 18, 1980, Sun sent written notice to Bellone that it was exercising its option to purchase the property for the sum of $42,000. By letter dated March 3, 1980, counsel for Sun reiterated to Bellone the Company's decision to exercise the option. Shortly thereafter, on March 11, 1980, Bellone entered into a sales agreement for the sale of the property to a Paul Bellone for the sum of $150,000.00, subject to the right of Sun "to purchase said property for the same price as contained" therein. By letter dated March 17, 1980, Bellone, through counsel, sent written notice to Sun that it could purchase the property under the purchase refusal option, for the sum of $150,000.00. Subsequently, on March 28, 1980, Sun filed this action for specific performance.

**3.** This was the expiration date of the final term. Lessee's failure to pay rent is the sole provision in the lease permitting Bellone to terminate the lease during its term or renewal terms.

As noted, the lower court entered judgment on the pleadings, finding that Sun had properly exercised the fixed price option thereby creating a valid contract of sale between Sun and Bellone.[4]  *See Phillips v. Tetzner*, 357 Pa. 43, 53 A.2d 129 (1947).  Consequently, the lower court concluded that Bellone's agreement with Paul Bellone was of no legal effect.

In reaching the conclusion that no material issues of fact remained unresolved, the lower court rejected Bellone's contention that the parties had pleaded two separate and distinct lease/sale agreements.[5]  This argument was based upon the existence of certain markings on her copy of the agreement which are not found on the agreement pleaded by Sun.  Our review of the two copies compels us to conclude that the agreements are substantially identical, and that the markings do not raise material issues of fact.  *See* 2 Goodrich Amram 2d § 1034(a): 1 (1976).  For this reason, we need not address appellant's second argument, that the lower court improperly considered appellant's failure to explain the markings.

Having reviewed the pleadings and the lease/sale agreement, we conclude that Bellone has not advanced any reason to support her claim that the lower court erred in entering judgment on the pleadings.

Order affirmed.

4. Because of this finding, the lower court did not determine whether Paul Bellone was a bona fide purchaser under the terms of the purchase refusal option.

5. An issue not raised by appellant in the pleadings or her argument thereon, is whether the inclusion of two options, each capable of being exercised "at any time," created an ambiguity which would render the entry of judgment on the pleadings improper.  *See Bobali Corp. v. Tamapa Co.*, 235 Pa.Super. 1, 340 A.2d 485 (1975) (allocatur refused); *Gulf Oil Corp. v. Montanaro*, 94 N.J.Super. 348, 228 A.2d 352 (1967); *Shell Oil Co. v. Boyer*, 234 Or. 270, 381 P.2d 494 (1963); *Shell Oil Co. v. Blumberg*, 154 F.2d 251 (5th Cir. 1956); *Sinclair Refining Co. v. Clay*, 102 F.Supp. 732 (N.D.Ohio 1951), aff'd. mem., 194 F.2d 532 (6th Cir. 1952); and *Sinclair Refining Co. v. Albritton*, 147 Tex. 468, 218 S.W.2d 185 (1949).  See generally the cases collected in the Annotation, 8 A.L.R.2d 604.  Since this issue has not been raised by appellant, at any time, it would be improper for us to raise it sua sponte.  *See Wiegand v. Weigand*, 461 Pa. 482, 337 A.2d 256 (1975).